# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

METROPOLITAN LIFE INSURANCE      :
COMPANY,      :
     :
             Plaintiff,      :
     :
       v.      :    CIVIL ACTION NO. _____
     :
ANAGNOSTIS MATULAS,      :
     :
             Defendant.      :

## COMPLAINT

Plaintiff, Metropolitan Life Insurance Company ("MetLife"), by and through its attorneys, White and Williams LLP, by way of Complaint against Defendant, Anagnostis Matulas ("Matulas" or "Defendant"), hereby alleges as follows:

## I.      THE PARTIES

1.      MetLife, at all times pertinent hereto, was and is an insurance company licensed to do and doing business in the State of Delaware and organized and existing by virtue of the laws of the State of New York, having its principal place of business at 200 Park Avenue, New York, New York.

2.      Matulas, at all times pertinent hereto was and is an individual adult resident of the City of Wilmington, State of Delaware. Matulas resides at 109 Brook Meadow Road, Wilmington, DE.

## II.      JURISDICTION AND VENUE

3.      Jurisdiction is in the District Court of the United States pursuant to provisions of 28 U.S.C. § 1332 by reason of diversity of citizenship and an amount in controversy, exclusive of interest and costs, which exceeds the sum of $75,000.00.

4.    Venue is properly laid in the District of Delaware pursuant to provisions of 28 U.S.C. § 1391 as being the place where Matulas resides and the policy in question was delivered.

### III.    THE APPLICATION

5.    On November 16, 2004, Matulas applied to MetLife for disability income insurance coverage.

6.    A true and copy of Application number signed by Matulas, and submitted to MetLife, is attached hereto and incorporated by reference in this Complaint as Plaintiff's Exhibit "1" ("Application").

7.    In Part B of the Application, executed on November 16, 2004, Matulas made factual representations regarding his then existing physical and mental condition and his past physical and mental condition, including, but not limited to the following representations of material fact:

a.    In response to question 2, Matulas denied that he had lost any time from work during the past 5 years due to accident or sickness;

b.    In response to question 4(a), Matulas denied that he had any personal/primary care physician;

c.    In response to question 4(b), Matulas denied that he had been examined or treated by any Chiropractor, Counselor, Health Facility, Physician, Practitioner, Psychiatrist, Psychologist, Social Worker or Therapist in the previous 5 years;

d.    In response to question 5(b), Matulas denied that he had ever received treatment, attention or advice for; been told that he had; or had any known indication of arthritis; any disease, disorder or deformity of the bones, muscles, tendons, or joints, including the spine; any neck or back problems or disorders; carpal tunnel syndrome;

e.    In response to question 7(d), Matulas denied that within the last 5 years, he had taken any prescription medications, over the counter herbal medications, or been advised

- 2 -

by a physician to take any medications, or that he was then taking any prescription medications or over the counter herbal medications; and

  f.  Matulas left blank question 9 which asked him to provide details for any "Yes" answer to Questions 5 through 8 (Use Supplementary Information Page, pg. 7 if more space is needed).

8.  In signing the Application, Matulas certified that he had read the Application and any supplemental applications or amendments, and to the best of his knowledge and belief, agreed that:

  a.  All statements and answers are true and complete; and

  b.  All of the information is correctly recorded in the application; and

  c.  Such written statements may be relied on by MetLife in order to determine if he qualified for issue of a policy.

9.  On December 8, 2004, Matulas executed a paramedical/medical exam form.

10.  A copy of the paramedical/medical exam form executed by Matulas on December 8, 2004 and submitted to MetLife, is attached hereto and incorporated by reference in this Complaint as Plaintiff's Exhibit "2" (Paramedical Exam").

11.  In the Paramedical Exam, Matulas made factual representations regarding his then existing physical and mental condition and his past physical and mental condition, including, but not limited to, the following representations of material fact:

  a.  In response to question 3 of the Paramedical Exam, Matulas denied that he had a doctor, practitioner or health facility who could give MetLife the most complete and up to date information concerning his present health;

  b.  In response to question 3 of the Paramedical Exam, Matulas further denied that he had any consultations in the past 5 years;

- 3 -

c.      In response to question 5(g) of the Paramedical Exam, Matulas denied that he had ever received treatment, attention, or advice from any physician, practitioner or health facility for, or been told by any physician, practitioner or health facility that he had arthritis; gout;  or disorder of the muscles, bones or joints; and

d.      In response to question 8(b), Matulas denied that during the past 5 years he had any illness; injury; or health condition not revealed above; or had been recommended to have any treatment; hospitalization; surgery; medical test; or medication.

12.     In signing the Paramedical Exam, Matulas certified that:

a.       He read the answers to questions 2-14 before signing;

b.      That the answers to questions 2-14 had been correctly written, as given by him;

c.      That the answers to questions 2-14 are true and complete to the best of his knowledge and belief; and

d.      That there are no exceptions to any such answers other than as written.

13.     In justifiable reliance upon the representations made in the Application and Paramedical Exam, and the consideration of the payment of the first premium, MetLife issued to Matulas, Disability Income Insurance Policy Number 6445299 AH with an effective date of December 17, 2004 ("Policy").

14.     A true and complete copy of the Policy is attached hereto and incorporated by reference as Plaintiff's Exhibit "3."

15.     The Policy provides that after two (2) years from the Effective Date of this Policy, or of any policy change or reinstatement, no misstatements, except for fraudulent misstatements, made by the insured on the Application can be used to void this Policy or such policy change or reinstatement, or to deny a claim under this Policy or the policy change or reinstatement, for a Disability starting after the end of such 2-year period.

WILDMS 139154v.1

16.    This action has been commenced within two (2) years after the Effective Date of the Policy.

## IV.    MATULAS' MISREPRESENTATIONS

17.    MetLife has learned that the statements made by Matulas at the time of the Application and Paramedical Exam, set forth in paragraphs 7 and 11 of this Complaint were not accurate, not complete and otherwise false and untrue, to wit:

a.    Matulas had an office visit on December 24, 2001 with Dr. Demetrios Zerefos;

b.    At the office visit of December 24, 2001 with Dr. Zerefos, Matulas provided a history of being involved in a motor vehicle accident on December 21, 2001 and a past medical history of being involved in a motor vehicle accident 15 years ago, no problems with his neck or back post-accident;

c.    Dr. Zerefos diagnosed Matulas on December 24, 2001 as suffering from acute cervical, thoracic, lumbosacral muscle sprain-strain and tension headaches;

d.    Matulas underwent x-ray studies on January 7, 2002 at Papastavros Associates which showed the cervical spine to be within normal limits and the lumbar spine showing first degree reversed spondylolisthesis; disc degeneration and spondylosis of L2-3; and suggestion of pars defect, L2 on the right side;

e.    Matulas continued treatment with Dr. Zerefos on January 31, 2002 and complained of lumbar soreness;

f.    Matulas had an office visit at First State Orthopedics on August 16, 2002 and was seen by Dr. Hogan. Matulas reported that his chief complaint was lower back pain and that the date of his injury was December, 2001. He further reported that he was being treated by Dr. Zerefos for this problem;

- 5 -

g       Matulas was seen in the office of Dr. Zerefos on September 9, 2002, reported increasing low back pain, mostly on the left. Dr. Zerefos' plan was for exercise therapy at home and to continue with Celebrex; and

h.      Matulas was seen in the office of Dr. Zerefos on October 9, 2002 and reported increased pain in the lower back, left side. It was Dr. Zerefos' opinion that Matulas had sustained mild permanency with lumbosacral spine due to his motor vehicle accident in December, 2001.

18.     By letter dated October 9, 2006, MetLife advised Matulas that it was rescinding the Policy due to material misrepresentations in the Application. Enclosed with this letter was a check representing a refund of premiums with interest.

19.     As of the filing of this Complaint, Matulas has not negotiated the premium refund check.

## COUNT I

## FRAUDULENT MISREPRESENTATION-APPLICATION

20.     MetLife incorporates by reference paragraphs 1-19 of this Complaint as though the same were fully set forth at length herein.

21.     In making the representations set forth in paragraphs 7 and 11 of this Complaint, Matulas intentionally misrepresented various aspects of his past medical history and treatment, including, but not limited to, the misrepresentations identified in paragraph 17.

22.     Matulas made these misrepresentations to induce MetLife to issue him a policy of disability insurance.

23.     MetLife justifiably relied on these misrepresentations in deciding to issue Matulas the Policy of disability insurance.

WILDMS 139154v.1

24.    Had MetLife known the facts set forth in paragraph 17 of this Complaint, or other aspects of Matulas' true medical history and treatment as may be revealed during discovery, MetLife would not have issued the Policy to Matulas.

WHEREFORE, MetLife respectfully demands the following relief:

(a)    a declaratory judgment adjudicating that the Policy was procured through Matulas' misrepresentations of material facts and failure to accurately disclose information to MetLife and that MetLife has no legal obligation to pay any past, present and/or future disability benefits to Matulas;

(b)    rescission of the Policy and declaration that the Policy is void ab initio; and

(c)    such other and further relief and/or damages as deemed appropriate by the Court, including, but not limited to, interest, costs and reasonable counsel fees.

## COUNT II

## INNOCENT MISREPRESENTATION – APPLICATION

25.    MetLife incorporates by reference paragraphs 1-24 of this Complaint as though the same were fully set forth at length herein.

26.    In making the representations set forth in paragraphs 7 and 11 of this Complaint, Matulas falsely stated various aspects of his true  medical history and treatment, including, but not limited to, the misrepresentations identified in paragraph 17.

27.    Matulas made these misrepresentations to induce MetLife to issue him a policy of disability insurance.

28.    MetLife justifiably relied on these misrepresentations in deciding to issue Matulas the Policy.

29.    Had MetLife known the facts set forth in paragraph 17 of this Complaint, or other aspects of Matulas' true medical history and treatment as may be revealed during discovery, MetLife would not have issued the Policy to Matulas.

WILDMS 139154v.1

**WHEREFORE**, MetLife respectfully demands the following relief:

(a)      a declaratory judgment adjudicating that the Policy was procured through Matulas' misrepresentations of material facts and failure to accurately disclose information to MetLife and that MetLife has no legal obligation to pay any past, present, and/or future disability benefits to Matulas;

(b)      rescission of the Policy and declaration that the Policy is void ab initio; and

(c)      such other and further relief and/or damages as deemed appropriate by the Court, including, but not limited to, interest, costs and reasonable counsel fees.

## COUNT III

## BREACH OF CONTRACT

30.      MetLife incorporates by reference paragraphs 1-29 of this Complaint as though the same were fully set forth at length herein.

31.      By signing the Application for insurance and the Paramedical Exam, Matulas entered into a contract for disability insurance coverage that imposed upon him certain contractual obligations, including, but not limited to, payment of premiums and providing true and complete information in the Application and Paramedical Exam.

32.      In concealing and failing to disclose in the Application and Paramedical Exam those aspects of his past medical history and treatment, including, but not limited to, the facts set forth in paragraph 17 of this Complaint, Matulas breached his contractual obligation to provide true and complete information and breached his duty of good faith and fair dealing.

WILDMS 139154v.1

**WHEREFORE**, MetLife respectfully demands the following relief:

(a)     a declaratory judgment adjudicating that the Policy was procured through Matulas' misrepresentation of material facts and failure to accurately disclose information to MetLife and that MetLife has no legal obligation to pay any past, present and/or future disability benefits to Matulas;

(b)     a rescission of the Policy and declaration that the Policy is void ab initio; and

(c)     such other and further relief as deemed appropriate by the Court, including, but not limited to, interest, costs and reasonable counsel fees.

                              WHITE AND WILLIAMS LLP


BY:     _____
        James S. Yoder (DE 2643
        Robert Wright (NY RW-0971)
        824 N. Market Street, Suite 902
        P.O. Box 709
        Wilmington, DE  19899-0709
        Phone: 302.654.0424
        Attorneys for Plaintiff,
        METROPOLITAN  LIFE  INSURANCE
        COMPANY


Dated:  December 15, 2006

WILDMS 139154v.1

EXHIBIT "A"

**MetLife®**

0000936 **-1 DE**

Metropolitan Life Insurance Company

## Part A. Application for Disability Income Insurance

1. (a) Proposed Insured

_Anagnostis        Matulas_

| Full Name | First/Given | Middle | Last/Surname | Suffix (e.g. Jr.) Prof. Desig. | (Maiden name if applicable) |

_M_ _____ _58_ ____ _46_ ____ (b) State of Birth _Greece_

Sex _____ Date of Birth ____ Age _____ (Country, if other than U.S.)

(c) Are you a United States citizen? ☒ Yes ☐ No  If "No," how long have you been a resident of the United States?____Years____ Months

Status of your visa (if applicable) ☐ Temporary ☐ Permanent

(d) Social Security Number _____ _3311_

(e) Driver's License Number _979910_ _____ State of Issue _DE_

(f) Do you read and write English? ☐ Yes ☐ No  If No, primary language you read and write _____

2. Residence: _11   Withers Way_

Number ____ Street

_Hockessin    De   19707_

City _____ State ____ Zip

3. (a) Business Address: _1721   West  Gilpin In_

Number _____ Street

_Wilmington  De  19805_

City _____ State ____ Zip

(b) Email Address: _____ Mail correspondence to: ☐ Home ☒ Business

(c) Employer's or Business Name: _5  Star  Pizza  Rest_ (d) Type of Business: _Restaurant_

**Business Owners Only**

(e) What is your percentage of ownership? _____ (f) How long have you been an owner? _____

(g) How long has the business existed?_____ (h) Number of employees in the business: _____

(i) How is the business organized? ☐ Sole Proprietor ☐ Partnership ☐ C Corporation ☐ S Corporation
☐ PA ☐ PC ☐ LLC ☐ LLP

4. (a) Primary Occupation: _Business  Owner_ (b) Your exact duties and

the percentage of time devoted to each duty including amount and type of travel, foreign and domestic:

| Duty | % |
|---|---|
| _Supervisory Duties_ | _50_ % |
| _Inventory Control_ | _20_ % |
| _Human Resources - Payroll_ | _15_ % |
| _Advertising_ | _15_ % |

(c) How many employees do you supervise? _4_

(d) How long have you been employed in your present occupation? _12 years_

(e) How long have you been employed by your present employer? _____

(f) Are you actively at work at least 30 hours per week in the above occupation? ☒ Yes ☐ No  If "No," explain below:

(g) Do you have any other full or part-time jobs? ☐ Yes ☒ No  If "Yes," give duties, hours worked and travel required below.

(h) Do you plan to change jobs in the next six months? ☐ Yes ☒ No  If "Yes," give details below.

(i) Are you aware of any fact that could change your occupational status or financial stability? ☐ Yes ☒ No
If "Yes," give details below.

IDI2000-APP-DE

# MetLife®

**0000936 -2 DE**

Metropolitan Life Insurance Company

## 5. Base Policy and Optional Benefits Being Applied For:

☒ Omni Advantage   ☐ Omni Select   ☐ Omni Essential

Monthly Benefit $ ___4 1 0 0___

Benefit Period (years) ☐ 2 ☐ 5 ☒ To Age 65 (N/A in B)
☐ To Age 70 (N/A in A, B)

Elimination Period (days) ☐ 60 ☒ 90 ☐ 180 ☐ 365
☐ 730 (365 & 730 N/A w/ 2 yr Benefit Period)

### ☐ Additional Monthly Indemnity (AMI)

Monthly Benefit $ _____

Benefit Period (years) ☐ 2 ☐ 5 ☐ To Age 65 (N/A in B)
☐ To Age 70 (N/A in A, B)

Elimination Period (days) ☐ 60 ☐ 90 ☐ 180 ☐ 365
☐ 730 (365 & 730 N/A w/ 2 yr Benefit Period)

### ☐ Priority Plus Disability Income Insurance (N/A in A, B)

Monthly Benefit $ _____

Benefit Period (years) ☐ 2 ☐ 5 ☐ To Age 65

Elimination Period (days) ☐ 60 ☐ 90 ☐ 180 ☐ 365
☐ 730 (365 & 730 N/A w/ 2 yr Benefit Period)

### Disability Income Optional Benefits

☐ Social Insurance Offset Benefit

Monthly Benefit $ _____

Elimination Period (days) ☐ 60 ☐ 90 ☐ 180 ☐ 365
☐ 730 (365 & 730 N/A w/ 2 yr Benefit Period)

☐ Residual with Recovery Benefit (N/A in A, B) ☐ 24 mos. ☐ 36 mos.
☐ Residual without Recovery Benefit (N/A in A, B)
☐ Guaranteed Insurability Option (N/A in A, B)
　　　Option Amount $ _____
☐ Good Health Benefit/Refund of Premium
☐ Lifetime (N/A in 3A, 2A, A, B)
☐ Lifetime for AMI (N/A in 3A, 2A, A, B)
☐ Cost of Living Adjustment with Buy-up
☐ Your Occupation (N/A in 5AS, 4A, 3A, 2A, A, B) (N/A in Essential)
☐ Transitional Your Occupation (N/A in Essential)
　　　☐ 5 yr (N/A in 3A, 2A, A, B)
　　　☐ 10 yr (N/A in 5AS, 4A, 3A, 2A, A, B)
　　　☐ To Age 65 (N/A in 5AS, 4A, 3A, 2A, A, B)
☒ Other _Catashphic_ 　2500
☒ Other _Basic Residual_
☐ Other _____

Premiums ☒ Level ☐ Step Rate

### ☐ Mortgage Comp Plus/ Fixed Term Disability Income Insurance

Monthly Benefit $ _____

Duration of Policy (years) ☐ 10 ☐ 15 ☐ 20 ☐ 30

　　Note: Applicant's Age + Duration Must Not Exceed Age 65

Elimination Period (days) ☐ 60 ☐ 90 ☐ 180

Mortgage or Loan Date _____

Mortgage or Loan Amount $ _____

% of Mortgage for which you are responsible _____%

Name and Address of Mortgagor/Lending Institution:

_____
_____
_____

### ☐ Business Overhead Expense Insurance

(a) Maximum Monthly Benefit for Covered Monthly Expense
　　$ _____

Benefit Period (months) ☐ 12 ☐ 24

Elimination Period (days) ☐ 30 ☐ 60 ☐ 90

Optional Benefits ☐ Good Health Benefit/Refund of Premium

☐ Guaranteed Insurability Option Amt. $ _____

(b) For a business other than a personal service business, please describe the personal services that you provide to your business without which revenue would be substantially reduced.

_____
_____
_____
_____

(c) Excluding yourself,
　(i) How many are employed in the business? _____
　(ii) How many of these employees are members of your profession? _____
　(iii) How many of these employees are members of your immediate family? _____

(d) List your average monthly business overhead expenses during the past 6 months. If you share monthly business expenses with others, list only your share. Exclude salaries, fees, drawing accounts, profits or any other remuneration for:
　(i) you;
　(ii) any partners;
　(iii) any member of your profession or person performing duties similar to yours; or
　(iv) any members of your immediate family.

Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ _____

Taxes (not income taxes) and mortgage
interest payments . . . . . . . . . . . . . . . . . . . . . . . .$ _____

Other interest on business indebtedness . . . . .$ _____

Utilities

　Electricity . . . . . . . . . . . . . . . . . . . . .$ _____

　Telephone . . . . . . . . . . . . . . . . . . . . . .$ _____

　Maintenance Services . . . . . . . . . . . . . . . . .$ _____

　Property & Liability Insurance . . . . . . . . . .$ _____

Depreciation of Business Equipment . . . . . . . .$ _____

Employees' salaries (excluding items above) . . . .$ _____

Other normal and customary fixed office
expenses (specify below) . . . . . . . . . . . . . . . . . .$ _____

_____
_____
_____

Total (of d above) . . . . . . . . . . . . . . . . . . .$ _____

IDI2000-APP-DE

# MetLife®

**Metropolitan Life Insurance Company**

0000936 -3 DE

**6. (a) Mode of Premium Payment:**
- ☐ Annual   ☐ Semi-Annual
- ☑ Check-O-Matic   ☐ Payroll Deduction
  - **(b)** Will the entire premium for this policy be paid directly by your employer?   ☐ Yes ☐ No
- **(c)** If "Yes" will any portion of this premium be treated as taxable income to you?   ☐ Yes ☐ No

**7. Amount paid with Application: $ 288.56** or ☐ None
This amount ☑ is ☐ is not equal to at least one month's premium.
No temporary insurance can take effect unless one month's premium is received.

**8. Revocable Beneficiary**

| Angela Manias | wife | |
|---|---|---|
| Full Name | Relationship | Date of Birth |

**9.** Do you have or have available to you through your employer, or are you applying for any other type of:
- **(a)** Individual, Association or Group disability income insurance coverage?   ☐ Yes ☑ No
- **(b)** Formal employer sick pay or Union disability income coverage not included in (a)?   ☐ Yes ☑ No
- **(c)** Business Overhead Expense or Buy/Sell Disability coverage?   ☐ Yes ☑ No

If "Yes" to question 9a, 9b or 9c, complete the following using the following codes for questions 9 and 10 to indicate "Type": G-Group; A-Association; E-Employer Sick Pay or Union; B-Business Overhead Expense; B/S-Buy/Sell

| Disability Coverage In Force, Applied For or Available Through Your Employer | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Company or Source | Type | Total Monthly Benefit | Social Insurance Offset | Issue Month/Year | Elimination Period Accident | Sickness | Benefit Period Accident | Sickness |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**10.** Is coverage being applied for replacing or changing any existing insurance with MetLife or any other insurance company?
☐ Yes   ☐ No   If "Yes", complete the following:

| Disability Coverage to be Replaced or Changed | | | | | | |
|---|---|---|---|---|---|---|
| Insurance Company Name And Address | Policy Number | Monthly Benefit | Type | Issue Month/Year | Termination Month/Year | Premium Mode |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**11. Financial Information:**

| | Current Year (Annualized) | Last Year | Two Years Ago |
|---|---|---|---|
| **Employee/Salaried Earnings** | | | |
| (a) Base Salary (W-2 Income) | $ | $ | $ |
| (b) Commissions | $ | $ | $ |
| (c) Bonus, Profit Sharing or Incentive Payments | $ | $ | $ |
| **Owner/Shareholder Earnings** | | | |
| (d) Sole Proprietor net business earnings/losses | $ | $ | $ |
| (e) Partnership/S-Corporation net business earnings/losses | $ | $ | $ |
| (f) Net share of corporate earnings/losses | $ | $ | $ |
| Total Earned Income (Sum of Lines a through f) | $ 80,000 | $ 80,000 | $ 75,000 |
| **Other Income; Unearned Income** | | | |
| (g) Dividends and Interest | $ | $ | $ |
| (h) Net rental income before depreciation | $ | $ | $ |
| (i) Other (identify source) _____ | $ | $ | $ |

**Financial Information (cont.)**

IDI2000-APP-DE

**MetLife®**

Metropolitan Life Insurance Company

**11. Financial Information (cont.)**

**Current Net Worth**

(j) Does your net worth exceed $3,000,000?   ☐ Yes  ☒ No
      (If "Yes" give details below.  Amounts expressed to the nearest  $100,000 are acceptable)

|                                                   | Assets |
| --- | --- |
| Cash, Savings, Stock & Bonds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$_____ |
| Personal Property (such as jewelry, furnishings) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$_____ |
| Personal Residence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$_____ |
| Other Real Estate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$_____ |
| Business Interest(s) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$_____ |
| Other (specify source)_____    $_____ |
| Less: Indebtedness    $_____ |
| **Total**    $_____ |

(k) Which tax forms are being submitted with this application?   ☒ 1040s and all schedules  ☐ W-2s  ☐ Other _____

(l) In the past five years have you or any business in which you held at least a 5% interest filed for bankruptcy?
     ☐ Yes   ☒ No   If "Yes", give details below, including date of discharge, status and type.

_____
_____
_____

**12.** (a) Have you:  had a driver's license suspended or revoked in the last 3 years; been convicted of 3 or more moving violations; been
          convicted of driving while impaired or intoxicated?   ☐ Yes  ☒ No  If "Yes", give details below.
      (b) Other than above, have you been convicted of any felony or misdemeanor, or do you have any charges pending?
          ☐ Yes   ☐ No  If "Yes", give details below.

_____
_____

**13.** Has any application for a policy of Life, Health or Disability Insurance on you ever been postponed, rated, modified, declined, rescinded
     or required an extra premium?   ☐ Yes ☒ No  If "Yes", give details below.

_____
_____

**14.** (a) Are you required to hold a professional job license?   ☐ Yes ☒ No
      (b) If "Yes", have you been subject to any disciplinary action, revocation, or suspension of your license, or do you have any charges
          currently pending against your license?   ☐ Yes  ☐ No  If "Yes", give details below.

_____
_____

**15.** Have you flown as a pilot, student pilot, or crew member in the last 2 years or do you intend to do so in the next 12 months?
     ☐ Yes   ☒ No  If "Yes", complete the Aviation Questionnaire.

**16.** Have you ever engaged in or do you plan to engage in: Automotive, Motorcycle (including off road use) or Power Boat Racing;
     Bobsledding; Snowboarding; Skiing; Underwater Cave Exploration; Water Skiing; White Water Rafting; Spelunking; Ballooning; Scuba
     Diving; Sky Diving; Bungee Jumping; Hang Gliding (including Slope Soaring, Parakiting, Ultralighting, etc.); Mountain Climbing;
     Parachuting; Snowmobile Racing; Slalom Racing; Rodeo Activities; Karate or Martial Arts?
     ☐ Yes   ☒ No   If "Yes", complete the Avocation Questionnaire.

# MetLife®

Metropolitan Life Insurance Company

0000936 -5 DE

## Part B. Statements By the Proposed Insured

1. (a) Height _6 4"_    (b) Weight _225_

2. How much time have you lost from work during the past 5 years because of accident or sickness? ___NO___

3. Date you last used tobacco in any form:  Date _____   Type _____   ☒ Never used tobacco

4. (a) Please provide the name, address and phone number of your personal/primary care physician(s) as well as the date and reason for your last consultation.  If none, check here ☐

| Name, Address and Phone Number | Date | Reasons for Consultation: Nature, Severity and Frequency of Symptoms; Diagnosis, Treatment and Current Status of Condition |
|---|---|---|
| Mr. Matulas has No Docdr | | |
| | | |
| | | |
| | | |

(b)  In addition, in the past 5 years has any Chiropractor, Counselor, Health Facility, Physician, Practitioner, Psychiatrist, Psychologist, Social Worker, or Therapist examined or treated you?   ☐ Yes   ☒ No

Give details below for each instance:

**(Use Supplementary Information Page, pg. 7 if more space is needed)**

| Name, Address and Phone Number of each Chiropractor, Counselor, Health Facility, Physician, Practitioner, Psychiatrist, Psychologist, Social Worker or Therapist | Date | Reasons for Consultation: Nature, Severity and Frequency of Symptoms; Diagnosis, Treatment and Current Status of Condition |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

IDI2000-APP-DE

0000936 -6 DE

# MetLife®

Metropolitan Life Insurance Company

**5. Have you EVER received treatment, attention or advice for; been told that you had; or had any known indication of:**

Yes   No

**(a)** Any disease or disorder of the heart; arteries or veins; chest pains; elevated (high) blood pressure (hypertension)? ☐ ☑

**(b)** Arthritis; any disease, disorder or deformity of the bones, muscles, tendons, or joints, including the spine; any neck or back problems or disorders; carpal tunnel syndrome? ☐ ☑

**(c)** Any mental, nervous or emotional problem, condition or disorder, including anxiety, depression or stress? ☐ ☑

**(d)** Stroke, embolism, thrombosis? ☐ ☑

**(e)** Cancer, tumor or polyp? ☐ ☑

**(f)** Diabetes or high blood sugar? ☐ ☑

**(g)** Any disease or disorder of the lungs or respiratory system, including asthma, allergy, emphysema, or Chronic Obstructive Pulmonary Disease? ☐ ☑

**(h)** Any disease or disorder of the liver, gall bladder, pancreas, digestive tract, including intestines; ulcer, colitis, hemorrhoids, or hernia? ☐ ☑

**(i)** Memory loss, loss of concentration, fatigue, neurologic disorder, unconsciousness, loss of cognition, dizziness, paralysis or numbness, impairment of nervous system, epilepsy, or seizures? ☐ ☑

**(j)** Any disease or disorder of the urinary tract or kidney; sugar, albumin or blood in urine? ☐ ☑

**(k)** Any physical deformity or physical impairment? ☐ ☑

**(l)** Any disease or disorder of glands; anemia, leukemia or other blood disorders? ☐ ☑

**(m)** Any disease or disorder of the prostate or testes; uterus, ovaries or breasts? ☐ ☑

**(n)** Any disease or disorder or impairment of the eyes, ears, mouth, nose or throat; any loss of vision or hearing? ☐ ☑

**(o)** Endocrine disorders or goiter or disease or disorder of the thyroid gland? ☐ ☑

**(p)** During the past 10 years: Any sexually transmitted disease; Positive HIV test; Acquired Immune Deficiency Syndrome or other immune deficiency? ☐ ☑

Yes   No

**(q)** Adult Attention Deficit Disorder, Adult Attention Deficit Hyperactivity Disorder, Alzheimer's Disease, Chronic Fatigue Syndrome; Epstein-Barr Virus, Fibromyalgia, Lyme Disease, Myalgia or Encephalitis? ☐ ☑

**6. Have you EVER:**

**(a)** Been advised to have any medical test or surgical operation that was not performed, or had any medical test or surgical operation performed, or gone to a hospital, doctor's office, clinic, dispensary or sanatorium for observation, examination or treatment; and this information has not been revealed by previous questions? ☐ Yes ☑ No

**(b)** Been advised to modify or restrict eating, drinking or living habits because of any health conditions? ☐ Yes ☑ No

**(c)** Had persistent cough, pneumonia, chest discomfort, muscle weakness, unexplained weight loss of 10 pounds or more, swollen glands, patches in the mouth, visual disturbance, recurring diarrhea, fever or infection? ☐ Yes ☑ No

**7.**

**(a)** Are you currently disabled, or do you expect to be disabled? ☐ Yes ☑ No

**(b)** Have you received or applied for disability, workers' compensation, or military disability benefits from any source in the past 5 years? ☐ Yes ☑ No

**(c)** Are you pregnant? ☐ Yes ☑ No
If "Yes," expected delivery date? _____

**(d)** Within the last five years, have you taken any prescription medications, over the counter herbal medications, or been advised by a physician to take any medications, or are you now taking any prescription medications or over the counter herbal medications?
If "Yes", give name, dosage, dates and reason below.

**8. Have you EVER** used heroin, cocaine, marijuana, barbiturates or other drugs, except as prescribed by a physician or other practitioner; abused alcohol or drugs; or received treatment or advice regarding the use of alcohol or drugs from a physician, other practitioner, or organization which assists those who have an alcohol or drug problem? ☐ Yes ☑ No

**9. For any "Yes" answer to Questions 5 through 8, give details: (Use Supplementary Information Page, pg. 7 if more space is needed)**

| Item No. | Name, Address and Phone Number of each Chiropractor, Counselor, Health Facility, Physician, Practitioner, Psychiatrist, Psychologist, Social Worker or Therapist | Dates | Reason for Consultation; Nature, Severity, and Frequency of Symptoms; Diagnosis, Treatment & Current Status of Condition |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

IDI2000-APP-DE

**MetLife**®

0000936 -7 DE

Metropolitan Life Insurance Company

# Supplementary Information Page for Applicant

Provide additional application information on this page.  **This information will be included in the Policy.**

Deb Amadure has financials
+ we have done Financial underwriting



**Metropolitan Life Insurance Company**

0000936 -8 DE

## Agreement

I have read this application and any supplemental applications or amendments, and to the best of my knowledge and belief, I agree that: **(a)** All statements and answers are true and complete; and **(b)** All of the information is correctly recorded in the application; and **(c)** Such written statements may be relied on by MetLife in order to determine if I qualify for issue of a policy.

I understand that the application seeks full disclosure of the information sought; and that no one has the right to alter or exclude or to direct me to alter or exclude any information from the application.

I understand that this application, any paramedical application, and any supplemental applications or amendments will become a part of any policies issued as a result of this application.

Except as set forth in the Temporary Insurance Agreement, the policy will not be in effect and MetLife will have no liability until: **(a)** a policy is delivered in person to me and is accepted by me; and **(b)** the full first premium due is paid. The policy will then be in effect as of its date of issue if at the time it is delivered:

> **(a)** the condition of my health, the amount of my income, and the status of my employment or occupation are the same as given in the application; and **(b)** I, the proposed insured, have not received any medical advice or treatment from a physician or other medical practitioner since the date of this application.

If there are any exceptions to (a) or (b), the policy will not be in effect and I will immediately give MetLife details in writing.

I understand that MetLife will rely on the fact that coverage under any policies listed in Part A, Question 10 on page 3 will end on the Effective Date of Termination shown. If such coverage does not end at that time, any policy issued as a result of this application will be void from the beginning; all premiums will be returned; and no benefits will be payable. MetLife has the right to contact any listed insurer after the Effective Date of Termination to confirm that coverage has ended.

**Any person who knowingly, and with intent to defraud an insurance company or other person, submits an application for insurance or files a claim containing any false, incomplete, or misleading information is guilty of insurance fraud, which is a crime.**

| Witness (Licensed Resident Agent) | Place | Mo. | Day | Yr. | Signature of Proposed Insured |
|---|---|---|---|---|---|
| X *William Sh* | *Wlm De* | 11 | -16 | -04 | X |

## Personal History Interview

As part of your application process, MetLife, or someone it designates, will telephone you to verify information in this application, including your occupation, medical history and income. This phone call will take between 15 and 20 minutes to complete. Please indicate below, the best way to reach you.

Home: *Cell*

| Day of Week | Date | Time | AM/PM | Phone | Day of Week | Date | Time | AM/PM | Phone |
|---|---|---|---|---|---|---|---|---|---|
| *anytime* | *After* | *10:00 pm* | | 302 *580 1923* | | | | | 302 892-2222 |

Other:

| Day of Week | Date | Time | AM/PM | Phone |
|---|---|---|---|---|
| | | | | ( ) |

## CHECK-O-MATIC (C-O-M)

I understand that paying my insurance premiums monthly may result in a higher yearly out-of-pocket cost than a less frequent premium mode.

**Be sure to enclose a voided blank check for the account you wish to use and sign this authorization.**

I authorize: (1) MetLife to initiate monthly deductions from my checking account, by electronic or other means, as payment for the coverage level selected; and (2) the financial institution on which my enclosed sample check (marked VOID) is drawn, to: (a) accept the deductions initiated by MetLife; and (b) give MetLife my most recent address upon MetLife's request. Withdrawals will continue until MetLife has had a reasonable opportunity to act upon my written request to end this service. I authorize deductions to be taken on the effective date of the policy and on the _____ day of the month, or the next business day.

| X | |
|---|---|
| Signature of Account Holder for Monthly Automatic Deductions | Date |

If your check is drawn on a credit union, indicate credit union phone number: (_____) _____

IDI2000-APP-DE



**MetLife**
Metropolitan Life Insurance Company
New York, New York 10010

## AUTHORIZATION

**In connection with an application for insurance, for underwriting and claim purposes, I authorize:**

- Any medical practitioner or facility or related entity; any insurer; the Medical Information Bureau, Inc. (MIB); any employer; group policyholder, contract holder, or any benefit plan administrator to give Metropolitan Life Insurance Company (the "Company"), or any third party acting on behalf of the Company in this regard:
  - personal information and data about me;
  - medical information, records and data, about me, including information, records and data about drugs prescribed, medical test results and sexually transmitted diseases;
  - information, records and data about me related to alcohol and drug abuse and treatment, including information and data records and data related to alcohol and drug abuse protected by Federal Regulations 42 CFR part 2;
  - information, records and data about me relating to Acquired Immune Deficiency Syndrome (AIDS) or AIDS related conditions including, where permitted by applicable law, Human Immunodeficiency Virus (HIV) test results; and
  - information, records and data about me relating to mental illness, other than psychotherapy notes.
- The Company to redisclose information, records, and data received pursuant to this Authorization about me as authorized by me in writing or as otherwise permitted by applicable law.
- The Company, or any third party acting on behalf of the Company in this regard, to request and obtain consumer, investigative consumer or motor vehicle reports about me.
- Any employer, business associate, financial institution, or government agency to give the Company, or any third party acting on behalf of the Company in this regard, any information or data that it may have about my occupation, avocations, driving record, finances, character, reputation and aviation activities.

**By signing below, I acknowledge my understanding that:**

- All or part of the information, records and data that the Company receives pursuant to this authorization may be disclosed to MIB. Such information may also be disclosed to and used by any reinsurer, employee, affiliate or independent contractor who performs a business service for the Company on the insurance applied for or on existing insurance with the Company, or disclosed as otherwise required or permitted by applicable laws.
- Medical information, records and data that may have been subject to federal and state laws or regulations, including federal rules issued by Health and Human Services, setting forth standards for the use, maintenance and disclosure of such information by health care providers and health plans and records and data related to alcohol and drug abuse protected by Federal Regulations 42 CFR part 2, once disclosed to the Company, may no longer be covered by those laws or regulations.
- Information obtained pursuant to this authorization about me may be used, to the extent permitted by applicable law, to determine the insurability of other family members.
- I may ask to be interviewed if an investigative consumer report is ordered. Please call me at ( )_____, time _____ if such report is ordered.
- Information relating to HIV test results will only be disclosed as permitted by applicable law.
- This authorization will end 30 months from the date on this form or sooner if prescribed by law. I may revoke it at any time by writing to the Company at _____and advising the Company that I have revoked this Authorization. Revocation may result in rejection of the application or in denial of coverage or a claim for benefits. Any action taken before the Company has received my revocation will be valid.
- I have a right to receive a copy of this form.

**A photocopy of this form is as valid as the original form.**

Signature of Proposed Insured: _____   Date: 11-16-04

Print Name of Proposed Insured: ANAGNOSTIS MANTAS

IDI2000-APP-AUTH

Sent By: APPS PARAMED;                610 532 8291;              Dec-16-04  4:12PM;          Page 2

Dec. 16, 2004 11:17AM          **PA FORMS**          DE Form. 9806   P. 1/3
APPS

**PART II: Paramedical/Medical Exam**                     Case/Policy No.:

☐ Metropolitan Life Insurance Company      ☐ Metropolitan Tower Life Insurance Company
☐ MetLife Investors Insurance Company       ☐ Metropolitan Insurance and Annuity Company
☐ New England Life Insurance Company        ☐ MetLife Investors USA Insurance Company
☐ Texas Life Insurance Company              ☐ General American Life Insurance Company

The Company indicated above is referred to as "the Company".
For Texas Life: If medical examination is not required; questions are to be completed by Agent.

The spaces below are for answers of person to be examined only. Nothing but the answers of such person should be recorded.

| | Date of Birth: (Mo./Day/Year) |
|---|---|
| 1. Name of Proposed Insured: (Last, First, Middle) ANAGNOSIS MATULAS | 1358 |

2. Tobacco Use – Indicate date last smoked/used:
/ / ☑ Never    / / ☑ Never    / / ☑ Never    / / ☑ Never
Cigarette          Smokeless Tobacco     Cigar/Pipe        Patch/Gum

Tobacco Never Used: ☐ Yes ☑ No

Amount/Frequency:

3. Who is the doctor, practitioner, or health care facility who can give us the most complete and up to date information concerning your present health? If "None", check ☐.

Name, full address, and phone number:  ANAGNOSIS MATULAS   109 BROOKMEADOW. RD.
302. 777-0946.

When was this doctor last consulted?   Why?  Never

What treatment was given or medication prescribed? If "None", check ☑

Reasons, findings, earlier consultations past 5 years?   Nothing

| 4. a) Height | b) Weight | c) Change in weight in past 12 months (give reason) |
|---|---|---|
| 64 ft. in. | 230 lbs. | Pounds lost 1  Pounds gained 2  Reason Diet |

| 5. Have you EVER received treatment, attention, or advice from any physician, practitioner or health facility for, or been told by any physician, practitioner or health facility that you had: | | Details: List question number. Give details; dates; duration; diagnosis; treatment; and doctors' names and addresses. |
|---|---|---|
| a) High blood pressure; chest pain, heart attack; or any other disease or disorder of the heart or circulatory system? | ☐ Yes ☑ No | |
| b) Asthma; bronchitis; emphysema; sleep apnea; shortness of breath; or any other disease or disorder of the lungs or respiratory system? | ☐ Yes ☑ No | |
| c) Seizures; stroke; paralysis, Alzheimer's disease; multiple sclerosis; Lou Gehrig's disease (ALS); memory loss; Parkinson's disease; progressive neurological disorder; headaches; dizziness; or any other disease or disorder of the brain or nervous system? | ☐ Yes ☑ No | |
| d) Ulcers; colitis; hepatitis; cirrhosis; or any other disease or disorder of the liver, gallbladder; stomach; or intestines? | ☐ Yes ☑ No | |
| e) Any disease or disorder of: the kidney; bladder; prostate; reproductive organs; or breasts; sexually transmitted disease; sugar; albumin; blood or pus in the urine? | ☐ Yes ☑ No ☐ Yes ☑ No | |
| f) Diabetes; thyroid disorder; or any other endocrine disorder? | ☐ Yes ☑ No | |
| g) Arthritis; gout; or disorder of the muscles; bones, or joints? | ☐ Yes ☑ No | |
| h) Cancer; tumor; polyp; or cyst? Any disease or disorder of the skin? | ☐ Yes ☑ No | |





Page 1
EMED-13-02

Dec. 16. 2004 11:18AM                                    No. 9806   P. 3/3

Details (Continued):

| | | | | |
|---|---|---|---|---|
| i) | Anemia; leukemia; or any other disorder of the blood or lymph glands? | ☐ Yes ☒ No | | |
| j) | Depression; stress; anxiety; or any other psychological or emotional disorder or symptoms? | ☐ Yes ☒ No | | |
| k) | Any disease or disorder of the eyes, ears, nose, or throat? | ☐ Yes ☒ No | | |

6. Are you now, or within the last six months, under observation or taking medication or treatment? (Including over the counter medications, vitamins, herbal supplements, etc.)     ☐ Yes ☒ No

Do you have any doctor's visits, medical care, or surgery scheduled?     ☐ Yes ☒ No

7. Other than the above, during the past five years have you had any:     ☐ Yes ☒ No

   a) Checkup; electrocardiogram; chest x-ray; or medical test?

   b) Illness; injury; or health condition not revealed above; or have been recommended to have any: treatment; hospitalization; surgery; medical test; or medication?     ☐ Yes ☒ No

9. Have you:

   a) ever been diagnosed or treated by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or AIDS related Complex (ARC)?     ☐ Yes ☒ No

   b) ever tested positive for the AIDS (HIV) virus or for antibodies to the AIDS (HIV) virus?     ☐ Yes ☒ No

10. a) Have you ever used heroin, cocaine, barbiturates, or other drugs, except as prescribed by a physician or other licensed practitioner?     ☐ Yes ☒ No

    b) Have you ever received treatment from a physician or counselor regarding the use of alcohol, or the use of drugs except for medicinal purposes; or received treatment or advice from an organization that assists those who have an alcohol or drug problem?     ☐ Yes ☒ No

    How often? _____

11. Do you exercise?   ☐ Yes ☒ No  Type _____

12. Are you now pregnant?   ☐ Yes ☒ No  If "Yes", estimated date of delivery? _____

13. Has a parent or sibling of any person to be insured ever had: heart disease; coronary artery disease; high blood pressure; cancer; diabetes; or mental illness? (If Yes, indicate below)     ☐ Yes ☒ No

| Relationship to Proposed Insured: | Age(s) if Living | Age(s) at Death | State of Health (Specific Conditions) or Cause of Death Attach additional sheet(s) if necessary |
|---|---|---|---|
| | | | |
| | | | |

14. a) Do you currently use any mechanical equipment such as a walker, wheelchair, long leg braces or crutches?     ☐ Yes ☒ No

    b) Do you need any assistance or supervision with the following activities: bathing, dressing, walking, moving in/out of a chair or bed, toileting, continence or taking medication?     ☐ Yes ☒ No

I have read the answers to questions 2-14 before signing. They have been correctly written, as given by me, and are true and complete to the best of my knowledge and belief. There are no exceptions to any such answers other than as written.

| Witness to Signature | City and State | Mo./Day/Year | Signature of Proposed Insured (Parent or Guardian if under 16) |
|---|---|---|---|
| _signature_ | Wilmington, DE | 12/8/04 | _signature_ |

Sent By: APPS PARAMED;                610 532 8291;        Dec-16-04  4:12PM;           Page 3/4

Dec. 16. 2004 11:17AM                                                    9806   P. 2/3

## Report of Paramedical/Medical Examiner

- Complete Sections I and III for Paramedical Exam
- Complete Sections I, II and III for Physician's Exam

**Section I**    If female, was proposed insured menstruating on date of this examination? Yes ☐ No ☐

1. (a) Date of birth 10-6-158   (b) Sex: M ☐ F ☐ (c) If female, was proposed insured menstruating on date of this examination? Yes ☐ No ☐

2.

| Height (in shoes) | Weight (clothed) | Chest (full inspiration) | Chest (forced expiration) | Abdomen (at umbilicus) |
|---|---|---|---|---|
| ft   in. | Males   lbs. | Males   in. | Males   in. | Males   in. |

Did you measure? Yes ☐ No ☐   Did you weigh? Yes ☐ No ☐

3. Blood Pressure (Record ALL readings – at least two):

| Sitting | If systolic over 140 or diastolic over 90, repeat later in exam |
|---|---|
| Systolic/Diastolic – 5th phase | |
| / | /         / |

4. Pulse At Rest:  Rate (per min.) _____ Irregularities (per min.) _____
5. Is appearance unhealthy or older than stated age? Yes ☐ No ☐
6. Urinalysis: Protein: Positive ☐ Negative ☐    Sugar: Positive ☐ Negative ☐
   Is blood also being sent to lab? Yes ☐ No ☐    ECG done? Yes ☐ No ☐

Urine samples must be sent to lab for analysis
**Place Kit Sticker Here**

Details for answers to questions 7–11.

**Section II**
7. Heart: Is there any:
   a) Enlargement?  Yes ☐ No ☐    c) Dyspnea?  Yes ☐ No ☐
   b) Murmur(s)?    Yes ☐ No ☐    d) Edema?    Yes ☐ No ☐
   (If Yes, complete below)

|  | Murmur 1 | Murmur 2 |
|---|---|---|
| Location (Apical, Aortic, Pulmonic, Parasternal) | | |
| Timing (Systolic, Presystolic, Diastolic) | | |
| Quality (Coarse, Blowing, Rumbling, Musical) | | |
| Loudness (Grade 1–6) | | |
| Constant (Yes or No) | | |
| Transmitted (Yes or No) | | |
| After Exercise (Increased, Absent, Unchanged, Decreased) | | |

Indicate:
Apex by:    X
Murmur area by:    O
Point of greatest intensity by:    →
Transmission by:

8. Is there on examination any abnormality of the following?
   a) Eyes, ears, nose, mouth pharynx? (If vision or hearing markedly impaired, indicate degree and correction.)    Yes ☐ No ☐
   b) Skin (include scars; lymph nodes; varicose veins or peripheral arteries?    Yes ☐ No ☐
   c) Nervous system (include reflexes, gait, and paralysis)?    Yes ☐ No ☐
   d) Respiratory system?    Yes ☐ No ☐
   e) Abdomen (describe scars, liver enlargement)?    Yes ☐ No ☐
   f) Genitourinary system?    Yes ☐ No ☐
   g) Endocrine system (include thyroid)?    Yes ☐ No ☐
   h) Musculoskeletal system (include spine, joints, amputations, and deformities)?    Yes ☐ No ☐
9. Are there any hernias?    Yes ☐ No ☐
10. Are you aware of additional medical history?    Yes ☐ No ☐
11. Are you the personal physician of the applicant?    Yes ☐ No ☐
12. Please provide your overall clinical impression of proposed insured:    Date/Time of exam

**Section III** Name of person examined
Place of exam: ☐ Examiner's office   ☐ Proposed Insured's Residence   ☐ Proposed Insured's Business

City/State _____    Branch/District # or Agency Name _____

Agent/Broker _____    Tax ID # _____

Signature of Paramedical/Medical Examiner _____    Address _____

Printed Name _____

Page 3
EMED-13-02

# **MetLife®**

Metropolitan Life Insurance Company
One Madison Avenue, New York, New York 10010-3690

Metropolitan Life Insurance Company ("MetLife"), a stock company, will pay the benefits of this policy according to its provisions.

## Disability Income Insurance Policy

* **Noncancelable and Guaranteed Renewable to Age 65. No Change in Premium Rates.** This means that, as long as You pay the Premium on time, We cannot change Your policy, or its Premium rate as shown on page 3, until the first Premium Due Date on or after Your 65th birthday.

* **Renewal Privilege After Age 65 With Limited Benefit Period. Premium Rates are Subject to Change.** If You are Gainfully Employed for at least 30 hours per week as of the first Premium Due Date on or after Your 65th birthday, You may continue coverage under this policy, exclusive of any riders providing additional benefits, for as long as You remain so employed. This privilege is explained on page 9.

* The Schedule of Benefits provided by this policy is shown on page 3.

We have issued this policy to You in consideration of the payment of the Premium and the statements made in Your Application. Your Application is part of Your policy.

## TRUE COPY

*Gwenn L. Carr*
Gwenn L. Carr
Vice-President and Secretary

*C. Robert Henrickson*

C. Robert Henrickson
President

**10-Day Right to Examine Policy.** Please read this policy. It is a legal contract between You and Us. You may return the policy to Us or to the representative through whom You bought it within 10 days from the date You receive it. If You return it within the 10-day period, the policy will be considered never to have been issued. We will refund any Premium paid.

See Table of Contents on page 4.

Countersigned and delivered on _____ By _____

# Metropolitan Life Insurance Company

## Policy Schedule

Effective Date: DECEMBER 17, 2004          Policy Number:      6445299 AH
Insured:     ANAGNOSTIS    MATULAS          Issue Age and Sex: 46      MALE

Monthly Benefit for Total Disability: $4,100      Elimination Period   90 days
Regular Occupation Period:     To Age 65
Accumulation Period:          180 days      Maximum Benefit Period:    To Age 65
                                           (See Table A in This Schedule)

|                                                                      | Annual Premium |
|----------------------------------------------------------------------|---------------|
| **Benefit Provisions**                                               |               |
| Monthly Benefit for Total Disability                                 | $2,775.29     |
| Residual Disability                          IDI2000-PR/RDIS         | $655.18       |
| Presumptive Disability                       IDI2000-PE/PDIS         | $0.00         |
| Catastrophic Disability Benefit              IDI2000-PR/CATDIS       | $75.50        |
| Elimination Period                           90 Days                 |               |
| Monthly Benefit Amount        $2,500                                 |               |

IDI2000-P/NC          3A  Nonsmoker    3              OMNI ADVANTAGE

DHAANN

# Metropolitan Life Insurance Company

## Policy Schedule

| | | | |
|---|---|---|---|
| Effective Date: | DECEMBER 17, 2004 | Policy Number: | 6445299 AH |
| Insured: | ANAGNOSTIS   MATULAS | Issue Age and Sex: | 46     MALE |

| | |
|---|---|
| Policy Fee | $60.00 |
| Financial Documentation Adjustment | ($222.28) |
| Total Annual Premium | $3,343.69 |
| Total Premium For Initial Term | $288.56 |

MONTHLY CHECK-O-MATIC

Table A     Maximum Benefit Period Varies By Age When Disability Begins

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Before age 61 | To Age 65 |
| At age 61, before age 62 | 48 Months |
| At age 62, before age 63 | 42 Months |
| At age 63, before age 64 | 36 Months |
| At age 64, before age 65 | 30 Months |
| At age 65, before age 75 | 24 Months |
| At or after age 75 | 12 Months |

See Renewal Provision for Ages 65 and Greater
See Policy Wording for Benefits Payable Under Any Riders

IDI2000-P/NC          3A  Nonsmoker     3                    OMNI ADVANTAGE

# Table of Contents

Renewability................................................................................. 1
Schedule of Benefits...................................................................... 3
Understanding this Policy............................................................... 5
Definitions..................................................................................... 5
Benefits......................................................................................... 7
    Monthly Benefit for Total Disability............................................ 7
    Waiver of Premiums................................................................. 7
    Disability Because of Transplant Surgery.................................. 8
    Rehabilitation......................................................................... 8
Recurrent and Concurrent Disability................................................ 8
Renewal Privilege if Employed After Age 65..................................... 9
    Renewal Privilege................................................................... 9
    Total Disability Benefit With Limited Benefit Period                     9
    Premiums.............................................................................. 9
Exclusions..................................................................................... 9
    General Exclusions.................................................................. 9
    Preexisting Conditions Exclusion.............................................. 9
Premium and Reinstatement........................................................... 9
    Premium Payment................................................................... 9
    Grace Period.......................................................................... 10
    Reinstatement........................................................................ 10
    Suspension During Military Service........................................... 10
    Suspension During Unemployment........................................... 10
Claims........................................................................................... 11
    Time of Loss.......................................................................... 11
    Notice of Claim....................................................................... 11
    Claim Forms........................................................................... 11
    Proof of Loss.......................................................................... 11
    Authorizations........................................................................ 11
    Examinations.......................................................................... 12
    Time of Payment of Claim........................................................ 12
    Payment of Claims.................................................................. 12
    Beneficiary............................................................................. 12
    How to Change the Beneficiary................................................. 12
    Assignment............................................................................ 12
General Provisions......................................................................... 12
    The Contract.......................................................................... 12
    Limitation on Agent's or Broker's or Other Person's Authority     12
    Time Limit on Certain Defenses................................................ 13
    Misstatement of Age and Sex................................................... 13
    Legal Actions.......................................................................... 13
    Conformity with State Statutes................................................. 13
    Waiver of Policy Provisions...................................................... 13
                                                                           13

Riders providing additional benefits, special endorsements or exclusion riders, if any, follow page 13.

## Understanding This Policy

To make this policy clear and easy to read, We have left out many cross-references and conditional statements. Therefore, the provisions of the policy must be read as a whole. For example, the Exclusions on page 9 apply to all benefit provisions of this policy.

A policy term and a policy anniversary are measured from the Effective Date of the policy. For example, if the Effective Date is May 5, 2001, the first policy anniversary is May 5, 2002. If the policy term is 6 months, the first term ends November 4, 2001.

Read this policy to find out how to exercise Your rights. Instructions for submitting a claim can be found on page 11. If You want to change an address, or request any administrative action by Us, You should do so on the forms prepared for each purpose. You can get these forms from Your licensed insurance representative or one of Our local offices.

When You Write to Us, please give Us Your name, address and policy number. Please notify Us promptly of any changes. We will Write to You at Your last known address.

Checks, drafts or money orders may be drawn on a U.S. bank to the order of Metropolitan Life (or "MetLife"). They are received subject to the condition that they may be handled for collection in accordance with the practice of the collecting bank or banks. If We do not receive the full amount of any check, draft or money order, it will not constitute payment. All payments are to be made in U.S. currency.

## Definitions

**Accumulation Period** means the number of consecutive days during which the Elimination Period must be satisfied. The Accumulation Period is shown on page 3, and begins on the first day that You are Disabled.

**Age 65** means the first Premium Due Date that occurs on or after Your 65th birthday.

**Age 70** means the first Premium Due Date that occurs on or after Your 70th birthday.

**Application** means the Written application(s) for this policy, including any amendments thereto, and any application(s) for a policy change or reinstatement.

**Complications of Pregnancy** means:

1.  Diseases of the mother which are not caused by pregnancy but which coexist with and are adversely affected by pregnancy, such as heart, kidney, lung and other similar diseases;

2.  Maternal conditions caused by the pregnancy which make its treatment more difficult, such as placenta praevia, ectopic pregnancy, hemorrhage following delivery, or similar severe conditions; or

3.  A cesarean section or a miscarriage.

This term does not include Physician-prescribed rest, false labor, morning sickness, occasional spotting, or other minor conditions associated with normal pregnancy.

**Disability** or **Disabled** means Total Disability that starts while Your policy is in force.

**Effective Date** means the date that the policy, or a rider, takes effect.

**Elimination Period** means the number of days of Disability which must elapse before benefits become payable for that Disability. These need not be consecutive days of Disability, but must occur within the Accumulation Period for the same or a related cause. No benefits are payable for the Elimination Period. Elimination periods are shown on page 3.

**Gainfully Employed** means actively engaged in an occupation for remuneration or profit.

**Impairment** means a loss of use or function that can be evaluated by medical means.

## Definitions (Continued)

**Injury** means an accidental bodily injury that occurs on or after the Effective Date of the policy and while Your policy is in force.

**Maximum Benefit Period** means the longest period of time for which We will pay benefits for any one period of Disability. Maximum Benefit Periods are shown on page 3.

**Physician** means a person who is:

1.    Legally licensed to practice medicine or psychology; or

2.    A duly licensed practitioner or therapist operating within the scope of his or her license.

A Physician can not be:

1.    You or anyone to whom You are related by blood or marriage;

2.    Anyone with whom You share a business interest; or

3.    Your employee.

**Preexisting Condition** means a Sickness or Injury for which, in the 5 years prior to the Effective Date:

1.    Medical advice or treatment or care was contemplated, or was recommended by or received from a Physician; or

2.    Symptoms existed that would cause an ordinarily prudent person to seek diagnosis, care or treatment.

**Premium** is shown on page 3 and is the amount required to keep Your policy in force.

**Premium Due Date** means the first day of each policy term.

**Regular Occupation** means Your usual occupation (or occupations, if more than one) in which You are Gainfully Employed at the time You become Disabled. If You are not Gainfully Employed at the time Your Total Disability begins, Regular Occupation shall then mean any occupation(s) for which You are reasonably fitted by Your education, training or experience.

**Regular Occupation Period** means the period of time as shown on page 3 which starts on the first day following the Elimination Period.

**Sickness** means sickness or disease that first manifests itself on or after the Effective Date of the policy and while Your policy is in force.

**Signed** means any symbol or method executed or adopted by a person with the present intention to authenticate a record. The signature may be transmitted by paper or electronic media, provided it is consistent with applicable law.

## Definitions (Continued)

**Total Disability** or **Totally Disabled** means that due solely to Impairment caused by Injury or Sickness, You are:

1. Before the end of the Regular Occupation Period shown on page 3:

   a. Prevented from performing the material and substantial duties of Your Regular Occupation;

   b. Not Gainfully Employed; and

   c. Receiving appropriate care from a Physician who is appropriate to treat the condition causing the Impairment.

2. After the Regular Occupation Period shown on page 3:

   a. Prevented from performing any occupation for which You are or become reasonably fitted by Your education, training or experience;

   b. Not Gainfully Employed; and

   c. Receiving appropriate care from a Physician who is appropriate to treat the condition causing the Impairment.

We may waive the requirement of care from a Physician if Your Physician provides documentation acceptable to Us that continued care would be of no benefit to You.

**We, Us** and **Our** mean Metropolitan Life Insurance Company.

**Write, Written** or **Writing** means a record that may be transmitted by paper or electronic media, and that is consistent with applicable law.

**You** and **Your** mean the insured named on page 3.

## Benefits

**Monthly Benefit for Total Disability**

We will pay the Monthly Benefit for Total Disability shown on page 3 while You are Totally Disabled. This benefit will start to accrue after the Elimination Period. We will pay the benefit while You remain Totally Disabled, but not beyond the Maximum Benefit Period. For periods of less than a month, benefits will be prorated based on a 30-day month.

If You die during a continuous period of Disability after benefits were paid for 12 months or more, an additional benefit, equal to the amount of the benefit payable for the last month of Disability, will be paid to Your beneficiary for each of the first 3 months after Your death.

**Waiver of Premiums**

After the earlier of the date:

1. You have been Disabled for a period of 90 consecutive days; or

2. You satisfy the Elimination Period,

We will waive any Premium that becomes due while You remain Disabled. Your policy and its benefits will continue as if the Premium had been paid.

We will also refund to You any Premium that You paid that became due during the first 90 consecutive days of Disability, or the period during which the Elimination Period was satisfied.

## Benefits (Continued)

The Premium waived will be based on the frequency of payment in effect on the date Your Disability starts.

If Premiums are being waived, and benefits have been payable for 12 months or more, any Premiums due during the first 90 days after that period of Disability ends will be waived. This additional 90-day waiver of Premium will apply only once during a period of Disability, including Recurrent Disabilities. Thereafter, any Premiums due will be payable. If You do not pay the first Premium due by the end of its grace period, Your policy will end.

Waiver of Premium ends when You are no longer Disabled. When You are no longer eligible for waiver of Premium, You can continue Your policy by paying the next Premium that becomes due.

**Disability Because of Transplant Surgery**

If You are Disabled because You have had surgery, at least 6 months after the Effective Date, to transplant part of Your body to someone else, We will consider You Disabled due to Sickness.

**Rehabilitation**

While You are receiving monthly benefits for Disability, We will consider participating in the cost of an occupational rehabilitation program aimed at helping You to return to Gainful Employment. Such program may include, but is not limited to, an accredited program of professional retraining or recertification. The program may be at Your request or We may suggest it. We will continue to pay benefits to You based on terms that We agree on with You.

In no case will We continue benefits beyond the Maximum Benefit Period.

## Recurrent and Concurrent Disability

**Recurrent Disability**

If, after the end of a period of Disability for which Disability benefits have been paid, You become Disabled again, the later period of Disability will be deemed a Recurrent Disability, which is a continuation of the preceding period of Disability, unless:

1.  You have been Gainfully Employed for at least 30 hours per week for at least 12 months following the end of the preceding period of Disability, if the Maximum Benefit Period for the Monthly Benefit for Total Disability is To Age 65 or longer; or

2.  You have been Gainfully Employed for at least 30 hours per week for at least 6 months following the end of the preceding period of Disability, if the Maximum Benefit Period for the Monthly Benefit for Total Disability is shorter than To Age 65; or

3.  The later period of Disability is due to a different or unrelated cause.

If either 1, 2 or 3 applies, the later period of Disability will be deemed a new period of Disability. A new Elimination Period must be satisfied before benefits start again, and a new Maximum Benefit Period will apply.

If the later period of Disability is deemed a Recurrent Disability, then it is not necessary for You to satisfy a new Elimination Period. However, Disability benefits paid for a Recurrent Disability are considered a continuation of the preceding period of Disability and will be subject to the Maximum Benefit Period that started with the preceding period of Disability. If the Maximum Benefit Period had ended with respect to the preceding period of Disability, no benefits will be payable for a recurrence of that Disability.

**Concurrent Disability**

If a Disability is caused by more than one Injury or Sickness, whether related or unrelated, which overlap for any time during a continuous period of Disability, We will pay benefits as if the Disability were caused by one Injury or Sickness.

### Renewal Privilege if Employed After Age 65--
### Total Disability Benefit With Limited Benefit Period

**Renewal Privilege**

Following the first Premium Due Date on or after Your 65th birthday, You may continue the coverage under this policy, exclusive of any riders providing additional benefits, as long as:

1.  You remain Gainfully Employed for at least 30 hours per week; and

2.  The Premium is paid on time.

You may exercise this privilege only while Your policy is in force and You are not Disabled.

We may require proof on each policy anniversary that You have continued to be Gainfully Employed for at least 30 hours per week during the 13 weeks immediately prior to that policy anniversary.

**Total Disability Benefit With Limited Benefit Period**

If You continue coverage under this privilege, benefits will be paid subject to the same provisions, limitations and exclusions in the policy. The Maximum Benefit Period will be 24 months for Total Disability starting before Your 75th birthday. If Total Disability starts after Your 75th birthday, the Maximum Benefit Period will be 12 months.

**Premiums**

The Premium will be based on:

1.  Your attained age, and will change on each policy anniversary based on Your attained age; and

2.  Your class on the Effective Date of the policy.

We may also change the Premium rate for Your policy as of any policy anniversary, but only if We change it for all policies in Your class.

## Exclusions

**General Exclusions**

We will not pay benefits for a Disability:

1.  Due to an act of war, whether declared or undeclared;

2.  Due to pregnancy or childbirth, but We will cover Disability due to Complications of Pregnancy;

3.  Due to any loss We have excluded by name or specific description;

4.  Due to Your committing, or attempting to commit, a felony;

5.  Existing while You are legally incarcerated or detained; or

6.  Caused by an intentionally self-inflicted Injury.

**Preexisting Conditions Exclusion**

We will not pay benefits for a Disability that starts during the first 2 years after the Effective Date if it was due to a Preexisting Condition. This exclusion does not apply to any condition that was disclosed, and that was not misrepresented, in the Application and was not excluded by name or specific description.

## Premium and Reinstatement

**Premium Payment**

The payment of the Premium shown on page 3, on or before the Effective Date, will keep the policy in force for the term which starts on the Effective Date. At the end of any term while the policy has been in force, You may renew the policy for a further term (called a renewal term). To renew, You must pay the Premium shown on page 3 by the Premium Due Date.

The last renewal term of the policy will end on the day before the first Premium Due Date on or after Your 65th birthday. See Renewal Privilege if Employed After Age 65 on page 9 for renewal past this date.

## Premium and Reinstatement (Continued)

All policy terms will begin at 12:01 A.M. and end at midnight Standard Time, where You live.

You may change the frequency of payment with Our approval.

**Grace Period**  This policy has a 31-day grace period.  This means that each Premium after the first may be paid up to 31 days after its due date.  During the grace period, the policy will stay in force.  If You become Disabled during the grace period while the Premium remains unpaid, We may deduct any unpaid Premium(s) from the benefits due You.

**Reinstatement**  If You do not pay the Premium before the end of the grace period, the policy will lapse.  After the policy has lapsed, You may apply for reinstatement by completing an Application and paying all unpaid Premium(s).  If We have not sent You a Written disapproval of the reinstatement Application within 45 days, the policy will be reinstated as of the date We received the Premium.

Any Premiums We accept for a reinstatement will be applied to a period for which Premiums have not been paid.

The reinstated policy will cover only a loss that results from an Injury that occurs or a Sickness that first manifests itself after the date of reinstatement.  In all other respects You and We will have the same rights under the policy, subject to any provisions noted on or attached to the reinstated policy.

**Suspension During Military Service**  If You enter full-time active duty in the military (land, sea or air) service of any nation or international authority, You may suspend this policy.  But, You may not suspend the policy during active duty for training lasting 3 months or less.  The policy will be in force while it is suspended, and We will not accept Premiums for that period.  Your policy will be suspended as of the date We receive Your Written request to suspend the policy.  No privileges or options under this policy or any attached riders may be exercised during suspension.  We will refund the pro rata portion of any Premium paid for a period beyond the date We receive your request.  Premiums must be paid to the date of suspension.

If Your full-time active duty in the military service ends before the first Premium Due Date on or after Your 65th birthday, You may request that We place this policy back in force without evidence of insurability.  Your coverage will start again when We receive:

1. Your Written request to place the policy back in force; and

2. The required pro rata Premium for coverage until the next Premium Due Date.

Your request and Premium payment must be received by Us within 90 days after the date Your active duty in the military service ends.  Premiums will be at the same rate that they would have been had Your policy remained in force.  The policy will not cover any loss due to an Injury that occurs or a Sickness that first manifests itself while the policy is suspended.  In all other respects You and We will have the same rights under the policy as at the time before it was suspended.

**Suspension During Unemployment**  After this policy has been in force for at least one year from the Effective Date, You may suspend this policy if You:

1. Become unemployed; and

2. Receive 8 weeks of governmental unemployment benefits.

The policy will not be in force while it is suspended, and We will not accept Premiums for that period.  No privileges or options under this policy or any attached riders may be exercised during suspension.

## Premium and Reinstatement (Continued)

The suspension will begin when We receive:

1.  Your Written request to suspend the policy; and

2.  Your certification that You are unemployed and that You have received 8 weeks of governmental unemployment benefits.

We will refund the pro rata portion of any Premium paid for a period beyond the date that the suspension begins. Premiums must be paid to the date of suspension.

After the end of a period of suspension, this policy may not be suspended again until 48 months have elapsed from the end of that period of suspension.

The suspension will end at the earlier of:

1.  6 months after the date of suspension, at which time You will be notified that the policy has been placed back in force and Premiums are now due; or

2.  The date We receive Your Written request to end the suspension, subject to evidence satisfactory to Us that You are Gainfully Employed.

You will be required to pay the pro rata Premium for coverage until the next Premium Due Date. If this policy is suspended on the first Premium Due Date on or after Your 65th birthday, this policy will end at that time and cannot be renewed.

Premiums will be at the same rate that they would have been had Your policy remained in force. The policy will not cover any loss due to an Injury that occurs or a Sickness that first manifests itself while the policy is suspended. In all other respects You and We will have the same rights under the policy as at the time before it was suspended.

## Claims

| | |
|---|---|
| **Time of Loss** | All losses must occur while Your policy is in force. |
| **Notice of Claim** | Written notice of claim must be given to Us at Our office within 30 days after a covered loss starts, or as soon thereafter as reasonably possible. |
| **Claim Forms** | After We receive the Written notice of claim We will send You Our proof of loss forms within 15 days. If We do not, You will meet the Written proof of loss requirements if You send Us, within the time set forth below, a Written statement of the nature and extent of Your loss. |
| **Proof of Loss** | Written proof of loss satisfactory to Us must be sent to Us within 90 days after the end of each monthly period for which You claim benefits. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time. However, such proof must be furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required. As often as is reasonably necessary, We may require as part of the proof of loss financial proof such as personal and business income tax returns, income statements, accountant's statements and other proof acceptable to Us. |
| | We may also require on a monthly basis, that You, and any Physician treating You, complete and Sign supplemental statements of claim. |
| **Authorizations** | We may require, as often as is reasonably necessary, that You provide authorizations for Us to obtain medical information, financial information, and any other information pertinent to Your claim. |

## Claims (Continued)

**Examinations**

At Our expense, as often as is reasonably necessary, We may require You to have an independent examination by a Physician of Our choice.

At Our expense, as often as is reasonably necessary, We may require an audit of all Your business and financial records, by a financial examiner of Our choice. This may include examination of business and financial records for any business in which You have an ownership interest.

At Our expense, as often as is reasonably necessary, We may have Our representatives conduct telephone or in-person interviews with You regarding Your claim.

**Time of Payment of Claim**

After We receive Written proof of loss, We will pay the benefits due under the policy.

**Payment of Claims**

All benefits will be paid to You. But, if You are not legally competent to give a valid release, or if any benefit is payable to Your estate, We may pay up to $10,000 to anyone who We believe is entitled to it. If We make such a payment in good faith, We will not be liable to anyone for the amount Wwe pay.

**Beneficiary**

The beneficiary is the person or persons to whom any benefits unpaid at Your death are payable. You may name a contingent beneficiary to become the beneficiary if all the beneficiaries die while You are alive. If no beneficiary or contingent beneficiary is named, or none is alive when You die, Your estate will be the beneficiary. While You are alive, You may change any beneficiary or contingent beneficiary.

If more than one beneficiary is alive when You die, We will pay them in equal shares, unless You have chosen otherwise.

**How to Change the Beneficiary**

You may change the beneficiary or contingent beneficiary of this policy by Written notice or assignment of the policy. No change is binding on Us until it is recorded at Our office. Once recorded, the change binds Us as of the date You Signed it. This change will be without prejudice to Us as to any payment We make or action We take before We record the change. We may require that You send Us the policy to make the change.

**Assignment**

You may assign Your policy or any claim under it by Written assignment. No assignment is binding on Us until it is recorded at Our office. Once recorded, the assignment binds Us as of the date You Signed it. The assignment will be without prejudice to Us as to any payment We make or action We take before We record the assignment. We will not be responsible for the validity of any assignment. We may require that You send Us the policy to record the assignment.

## General Provisions

**The Contract**

This policy with riders, if any, and the Application make up the entire contract. All statements in the Application will be representations and not warranties. No statement will be used to contest the policy unless it appears in the Application.

**Limitation on Agent's or Broker's or Other Person's Authority**

No agent, broker, or other person except Our President, Our Secretary or Vice-President may:

1. Make or change any contract of insurance; or

2. Change or waive any terms of this policy.

Any change or waiver must be in Writing and Signed by Our President, Secretary, or Vice-President.

## General Provisions (Continued)

**Time Limit on Certain Defenses**

After 2 years from the Effective Date of this policy, or of any policy change or reinstatement, no misstatements, except for fraudulent misstatements, made by You on the Application can be used to void this policy or such policy change or reinstatement, or to deny a claim under this policy or the policy change or reinstatement, for a Disability starting after the end of such 2-year period.

No claim for Disability starting after 2 years from the Effective Date of this policy, or of any policy change or reinstatement, will be reduced or denied on the grounds that a Sickness or physical condition had existed, but not manifested itself, before the Effective Date of this policy, or of such policy change or reinstatement, unless, on the date the Disability starts, that Sickness or physical condition was excluded from coverage by name or specific description.

**Misstatement of Age and Sex**

If Your age or sex is not stated correctly on Our records, the benefits under the policy will be those that the Premium You paid would have bought at Your correct age and sex.

**Legal Actions**

No legal action may be brought until 60 days after Written proof of loss has been provided to Us. No such action may be brought after 3 years from the time Written proof of loss is required to be provided to Us.

**Conformity with State Statutes**

Any provision in this policy which, on the Effective Date, conflicts with the laws of the state in which You reside on that date is amended to meet the minimum requirements of such laws.

**Waiver of Policy Provisions**

Our failure to invoke or enforce a right We have reserved under the terms of this contract may not be deemed a permanent waiver of that right.

Copy of Application is attached.

**Metropolitan Life Insurance Company**

## Rider: Monthly Benefit for Residual Disability

This rider is a part of the policy if it is referred to on page 3.

**Effective Date**  The Effective Date of this rider is shown on page 3.

**Premium**  The Premium for this rider is shown on page 3.

**Definitions**  The definition of Disability or Disabled in Your policy is amended to read as follows:

>  "**Disability** or **Disabled** means either Total or Residual Disability that starts while Your policy is in force."

**Residual Disability** or **Residually Disabled** means that due solely to Impairment caused by Injury or Sickness:

1. Your Earnings are reduced by at least 20 percent of Your Prior Earnings; and

2. You are receiving appropriate care from a Physician who is appropriate to treat the condition causing the Impairment; and

3. You are not Totally Disabled, and are Gainfully Employed, but You are:

    a. Prevented from performing one or more of the material and substantial duties of Your Regular Occupation; or

    b. Performing the material and substantial duties of Your Regular Occupation, but are not able to perform them for more than 80 percent of the time normally required of You; or

    c. Engaged in another occupation.

We may waive the requirement of care from a Physician if Your Physician provides documentation acceptable to Us that continued care would be of no benefit to You.

**Earnings** means income or compensation, payable as remuneration to You, for actual services You perform, or for goods or services provided by a business in which You have an ownership interest. This term includes salary, fees, profits or losses, commissions, bonuses and other payment for goods or services, which You or Your business render or provide.  Earnings are determined after deduction of normal and customary unreimbursed business expenses, but before deduction of any income taxes.

Earnings do not include:

1. Income from dividends, interest, rent, royalties, annuities, or investments; or

2. Income from deferred compensation plans, formal sick pay benefits, disability income policies, or retirement plans.

**Review Date** means each anniversary date of the start of a period of Disability.

**Index Month** means the June before the Review Date. The first Index Month is the June before the start of a period of Disability.

## Rider: Monthly Benefit for Residual Disability (Continued)

**CPI-W** means the Consumer Price Index for Urban Wage Earners and Clerical Workers for all items. It is published by the United States Bureau of Labor Statistics. If the CPI-W cannot be used or is not available, We will choose a suitable index to replace it. CPI-W will then mean the chosen index.

**Prior Earnings** means the greater of Your average monthly Earnings for the 3 calendar years immediately prior to the start of Your Disability, or for the 24 months immediately prior to the start of Your Disability, provided there is financial documentation satisfactory to Us.

After the start of a period of Disability, the Prior Earnings are increased each year, on the Review Date. The Prior Earnings will be multiplied by a factor equal to the CPI-W for the Index Month divided by the CPI-W for the preceding Index Month. The percentage increase in the Prior Earnings in any given year will not be more than 7% or less than 1%.

**Benefits**

**Monthly Benefit for Residual Disability** --While You are Residually Disabled, We will pay a monthly benefit for Residual Disability, if the Elimination Period has been met (by Total Disability and/or Residual Disability).

The monthly amount of this benefit equals:

$\underline{A-B}$ x Monthly Benefit for Total Disability as shown on page 3
  A

"A" is Your Prior Earnings.

"B" is Your Earnings for the month for which Residual Disability is claimed. Such Earnings will not include income received for services You performed prior to the date Your Residual Disability started.

If Earnings for the month for which Residual Disability is claimed are 25 percent or less of Prior Earnings, We will consider "B" to be zero; that is, the full Monthly Benefit for Total Disability, as shown on page 3, will be payable.

For example, if Your Monthly Benefit for Total Disability is $1,000, and Your Prior Earnings are $2,000, and Your monthly Earnings for the month for which Residual Disability is claimed are $800; Your Residual Disability benefit would be computed as follows:

$\underline{\$2,000-\$800}$ x $1,000 = $600
  $2,000

For periods of less than a month, benefits will be prorated based on a 30-day month.

During the first 6 months during which Residual Disability benefits are paid, the minimum monthly benefit for Residual Disability will be 50 percent of the Monthly Benefit for Total Disability.

In determining "A" and "B" above, the same accounting method (cash or accrual) must be used. Once chosen, the accounting method (cash or accrual) will be applied consistently to the formula above.

**Cost-of-Living Adjustment for Disability Benefits**—If a Cost-of-Living Adjustment for Disability Benefits (COLA) rider is included in Your policy, then in computing Residual Disability benefits, We will substitute the Adjusted Monthly Benefit for Total Disability, as defined in the COLA rider, for the Monthly Benefit for Total Disability.

The Residual Disability benefit will be payable starting on the day after the Elimination Period ends; however, We will not pay a Residual Disability benefit while We are paying You the Total Disability benefit.

### Rider: Monthly Benefit for Residual Disability (Continued)

We will continue to pay this benefit until the earlier of:

1. The date You are no longer Residually Disabled; or

2. The date the Maximum Benefit Period ends.

**Proof of Earnings**

We may require proof from You, as often as is reasonably necessary, as to Your:

1. Prior Earnings; and

2. Earnings for each month for which a Residual Disability is claimed.

This may include financial proof such as Your personal and business income tax returns, income statements, accountant's statements or other proof acceptable to Us. We may require an audit of all Your business and financial records, by a financial examiner of Our choice. This may include examination of financial records for any business in which You have an ownership interest.

**Time Limit on Certain Defenses**

After 2 years from the Effective Date of this rider, no misstatements, except for fraudulent misstatements, made by You on the Application for this rider or the policy to which it is attached can be used to void this rider or deny a claim under this rider for a Disability starting more than 2 years from the Effective Date of this rider.

No claim for Disability starting after 2 years from the Effective Date of this rider will be reduced or denied on the grounds that a Sickness or physical condition had existed, but not manifested itself, before the Effective Date of this rider unless, on the date the Disability starts, that Sickness or physical condition was excluded from coverage by name or specific description.

**Termination**

This rider will end on the earliest of:

1. The date the policy ends;

2. The first Premium Due Date on or after Your 65th birthday, or the fifth policy anniversary, if later; or

3. The date We receive Your Written request to end this benefit, in which case You must return the policy to Us. We will change the policy and return it to You.

*Gwenn L. Carr*
Gwenn L. Carr
Vice-President and Secretary

**Metropolitan Life Insurance Company**

## Rider: Presumptive Total Disability

This rider is a part of the policy if it is referred to on page 3 of the policy.

| | |
|---|---|
| **Date of Rider** | The Effective Date of this rider is shown on page 3 of the policy. |
| **Premium** | The Premium for this rider is shown on page 3 of the policy. |

**Definitions**    **Presumptive Total Disability** means that You are presumed to be totally and permanently Disabled if an Injury or Sickness causes Your complete, irrecoverable and irreparable loss of:

1. The use of both hands, or both feet, or one hand and one foot;

2. The sight in both eyes;

3. Speech; or

4. Hearing in both ears.

**Benefits**    If You are Totally Disabled according to the definition of Presumptive Total Disability, We will:

1. Consider You to be Totally Disabled even if You are able to work and even if You are not receiving medical care from a Physician; and

2. Waive the Elimination Period, except with respect to any Social Insurance Offset Benefit rider included in Your policy.

Benefits for Presumptive Total Disability will be the Monthly Benefit for Total Disability shown on page 3 of the policy, and will be paid in place of any other Disability benefits. Benefits for Presumptive Total Disability will be payable while You remain Presumptively Totally Disabled, but not beyond the Maximum Benefit Period for this policy shown on page 3 of the policy.

**Time Limit on Certain Defenses**    After 2 years from the Effective Date of this rider, no misstatements, except for fraudulent misstatements, made by You on the Application for this rider or the policy to which it is attached can be used to void this rider or deny a claim under this rider for a Total Disability starting more than 2 years from the Effective Date of this rider.

No claim for Total Disability starting after 2 years from the Effective Date of this rider will be reduced or denied on the grounds that a Sickness or physical condition had existed, but not manifested itself, before the Effective Date of this rider unless, on the date the Total Disability starts, that Sickness or physical condition was excluded from coverage by name or specific description.

**Termination**    This rider will end on the earliest of:

1. The date the policy ends;

2. The first Premium Due Date on or after Your 65th birthday, or the fifth policy anniversary, if later; or

3. The date We receive Your Written request to end this benefit, in which case You must return the policy to Us. We will change the policy and return it to You.

*Gwenn L. Carr*
Gwenn L. Carr
Vice-President and Secretary

**Metropolitan Life Insurance Company**

## Rider: Catastrophic Disability Benefit

This rider is a part of the policy if it is referred to on page 3.

**Date of Rider**    The Effective Date of this rider is shown on page 3 of Your policy.

**Premium**    The Premium for this rider is shown on page 3 of Your policy.

**Definitions**    **Aphasia** means the loss, due to Injury or disease of the brain centers, of:

1.  The power of expression by speech, writing, or signs; or

2.  Comprehension of spoken or written language.

**Catastrophic Disability** or **Catastrophically Disabled** means that due to Injury or Sickness, You:

1.  Have a complete, irrecoverable and irreparable loss of:

    a.  Use of both hands, or both feet, or one hand and one foot;

    b.  The sight in both eyes;

    c.  Speech; or

    d.  Hearing in both ears;

        or

2.  Are Totally Disabled and have: Alzheimer's Disease or other irreversible form of senility or dementia; Aphasia; Hemiparesis; Paraplegia; or Quadriplegia.

**Elimination Period for Catastrophic Disability** means the number of consecutive days of Catastrophic Disability that must elapse before benefits for Catastrophic Disability become payable. No benefits are payable under this rider for the Elimination Period for Catastrophic Disability. The Elimination Period for Catastrophic Disability is shown on page 3 of Your policy. If You are Catastrophically Disabled under item 1 of the definition of Catastrophic Disability, this Elimination Period will be waived.

**Hemiparesis** means partial paralysis affecting both limbs on one side of the body.

**Paraplegia** means paralysis of the legs and lower part of the body.

**Quadriplegia** means paralysis of all four limbs.

**Catastrophic Disability Benefit**    Following the Elimination Period for Catastrophic Disability while You are Catastrophically Disabled, We will pay You the Monthly Benefit for Catastrophic Disability shown on page 3 of Your policy. For the first 12 months for which benefits are payable for Catastrophic Disability, the benefit will be paid at 120% of the Monthly Benefit for Catastrophic Disability. The Monthly Benefit for Catastrophic Disability will be paid in addition to any other Disability benefit payments under Your policy. These benefits will be paid until the earlier of:

1.  The date You are no longer Catastrophically Disabled; or

2.  The date the Maximum Benefit Period shown on page 3 of Your policy ends.

## Rider: Catastrophic Disability Benefit (continued)

**Cost-of-Living Adjustment (if included in Your policy)**    If a Cost-of-Living Adjustment for Disability Benefits (COLA) rider is included in Your policy, then We will adjust the Catastrophic Disability benefits. The adjustment will be made in the manner specified in the COLA rider, with the amount of the Catastrophic Disability Benefit being substituted for the amount of the Monthly Benefit for Total Disability in the COLA rider.

**Time Limit on Certain Defenses**    After 2 years from the Effective Date of this rider, no misstatements, except for fraudulent misstatements, made by You on the Application for this rider or the policy to which it is attached can be used to void this rider or deny a claim under this rider for a Catastrophic Disability starting more than 2 years from the Effective Date of this rider.

No claim for Catastrophic Disability starting after 2 years from the Effective Date of this rider will be reduced or denied on the grounds that a Sickness or physical condition had existed, but not manifested itself, before the Effective Date of this rider unless, on the date the Catastrophic Disability starts, that Sickness or physical condition was excluded from coverage by name or specific description.

**Termination**    This rider will end on the earliest of:

1. The date the policy ends;

2. The first Premium Due Date on or after Your 65th birthday, or the fifth policy anniversary, if later; or

3. The date We receive Your Written request to end this benefit, in which case You must return the policy to Us. We will change the policy and return it to You.

*Gwenn L. Carr*

Gwenn L. Carr
Vice-President and Secretary

**Metropolitan Life Insurance Company**

Name of Insured
Anagnostis Matulas

Agency
847

Sales Office
56H

Application Number
704022858
Date of this form
December 20, 2004
Policy Number
6445299 AH

To: Metropolitan Life Insurance Company:    **Application Amendment**

# MetLife®

Metropolitan Life Insurance Company

I amend the application referred to above, as follows:

The answer to question 8 on page 3 is Date of Birth is 12/2/1967.

The answer to question 7d on page 6 is no medications.

*Do Not Alter or Amend This Form*

**This application amendment** is part of the application referred to above and is subject to the agreements in that application. The application and this amendment are part of the policy/contract to which they are attached.

To the best of my knowledge and belief, the statements and answers in the application as amended by this form are true and complete as of the date this form is signed. There are no facts or circumstances which would require a change in the answers in the application, except as shown above.

Signature of Insured                          Date              Signature of Witness                          Date

It is important that this signed document be returned to the IDI office within 30 days of receipt. Send to:

**MetLife – Disability Income Unit**
**PO Box 30591**
**Tampa Fl 33630-3591**
**Attention: A/R Control**
**Fax: 813-673-3808**

843-82-A (0694) Printed in U.S.A.                                                    18000021618 (0694) NYHO-HY898A

0000936 -1 DE

# MetLife®

Metropolitan Life Insurance Company

## Part A. Application for Disability Income Insurance

1. **(a) Proposed Insured**

   ANAGNOSTIS        MATULAS

   | Full Name | First/Given | Middle | Last/Surname | Suffix (e.g. Jr.) Prof. Desig. | (Maiden name if applicable) |

   M _____ 58 _____ 46 **(b)** State of Birth  Greece

   Sex _____ Date of Birth _____ Age _____ (Country, if other than U.S.)

   **(c)** Are you a United States citizen? ☒ Yes ☐ No  If "No," how long have you been a resident of the United States?___Years___Months
   Status of your visa (if applicable) ☐ Temporary ☐ Permanent

   **(d)** Social Security Number __3311__

   **(e)** Driver's License Number __979910__  State of Issue  DE

   **(f)** Do you read and write English? ☐ Yes ☐ No  If No, primary language you read and write _____

2. **Residence:**

   11  Withers WAY

   Number _____ Street _____

   Hockessin  De  19707

   City _____ State _____ Zip

3. **(a) Business Address:**

   1721  West  Gilpin In

   Number _____ Street _____

   Wilm. in De  19805

   City _____ State _____ Zip

   **(b)** Email Address: _____  Mail correspondence to: ☐ Home ☒ Business

   **(c)** Employer's or Business Name:  5 Star Pizza Rest.  **(d)** Type of Business: Restaurant

   ---

   **Business Owners Only**
   **(e)** What is your percentage of ownership? _____  **(f)** How long have you been an owner? _____

   **(g)** How long has the business existed?_____  **(h)** Number of employees in the business: _____

   **(i)** How is the business organized? ☐ Sole Proprietor ☐ Partnership ☐ C Corporation ☐ S Corporation
   ☐ PA ☐ PC ☐ LLC ☐ LLP

   ---

4. **(a) Primary Occupation:** Business  Owner  **(b)** Your exact duties and
   the percentage of time devoted to each duty including amount and type of travel, foreign and domestic:

   | Supervisory Duties | 50 % |
   | Inventory Control | 20 % |
   | Human Resources - Payroll | 15 % |
   | Advertising | 15 % |

   **(c)** How many employees do you supervise? 4

   **(d)** How long have you been employed in your present occupation? 12 years

   **(e)** How long have you been employed by your present employer? _____

   **(f)** Are you actively at work at least 30 hours per week in the above occupation? ☒ Yes ☐ No  If "No," explain below:

   **(g)** Do you have any other full or part-time jobs? ☐ Yes ☒ No  If "Yes," give duties, hours worked and travel required below.

   **(h)** Do you plan to change jobs in the next six months? ☐ Yes ☒ No  If "Yes," give details below.

   **(i)** Are you aware of any fact that could change your occupational status or financial stability? ☐ Yes ☒ No
   If "Yes," give details below.

IDI2000-APP-DE

0000936 -2 D

# MetLife®

Metropolitan Life Insurance Company

**5. Base Policy and Optional Benefits Being Applied For:**

☒Omni Advantage  ☐ Omni Select  ☐ Omni Essential

Monthly Benefit $ 4100

Benefit Period (years)  ☐ 2  ☐ 5  ☒To Age 65 (N/A in B)
☐ To Age 70 (N/A in A, B)

Elimination Period (days)  ☐ 60  ☒90  ☐ 180  ☐ 365
☐ 730 (365 & 730 N/A w/ 2 yr Benefit Period)

**☐ Additional Monthly Indemnity (AMI)**

Monthly Benefit $ _____

Benefit Period (years)  ☐ 2  ☐ 5  ☐ To Age 65 (N/A in B)
☐ To Age 70 (N/A in A, B)

Elimination Period (days)  ☐ 60  ☐ 90  ☐ 180  ☐ 365
☐ 730 (365 & 730 N/A w/ 2 yr Benefit Period)

**☐ Priority Plus Disability Income Insurance (N/A in A, B)**

Monthly Benefit $ _____

Benefit Period (years)  ☐ 2  ☐ 5  ☐ To Age 65

Elimination Period (days)  ☐ 60  ☐ 90  ☐ 180  ☐ 365
☐ 730 (365 & 730 N/A w/ 2 yr Benefit Period)

**Disability Income Optional Benefits**

☐ Social Insurance Offset Benefit

Monthly Benefit $ _____

Elimination Period (days)  ☐ 60  ☐ 90  ☐ 180  ☐ 365
☐ 730 (365 & 730 N/A w/ 2 yr Benefit Period)

☐ Residual with Recovery Benefit (N/A in A, B)  ☐ 24 mos.  ☐ 36 mos.
☐ Residual without Recovery Benefit (N/A in A, B)
☐ Guaranteed Insurability Option (N/A in A, B)

Option Amount $ _____

☐ Good Health Benefit/Refund of Premium
☐ Lifetime (N/A in 3A, 2A, A, B)
☐ Lifetime for AMI (N/A in 3A, 2A, A, B)
☐ Cost of Living Adjustment with Buy-up
☐ Your Occupation (N/A in 5AS, 4A, 3A, 2A, A, B) (N/A in Essential)
☐ Transitional Your Occupation (N/A in Essential)
☐ 5 yr (N/A in 3A, 2A, A, B)
☐ 10 yr (N/A in 5AS, 4A, 3A, 2A, A, B)
☐ To Age 65 (N/A in 5AS, 4A, 3A, 2A, A, B)
☒Other  Catastrophic  2500
☒ Other  Basic Residual
☐ Other _____

**Premiums**  ☒Level  ☐ Step Rate

**☐ Mortgage Comp Plus/**
**Fixed Term Disability Income Insurance**

Monthly Benefit $_____

Duration of Policy (years)  ☐ 10  ☐ 15  ☐ 20  ☐ 30

Note: Applicant's Age + Duration Must Not Exceed Age 65

Elimination Period (days)  ☐ 60  ☐ 90  ☐ 180

Mortgage or Loan Date _____

Mortgage or Loan Amount $ _____

% of Mortgage for which you are responsible _____%

Name and Address of Mortgagor/Lending Institution:

_____

_____

IDI2009-APP-DE

**☐ Business Overhead Expense Insurance**

(a) Maximum Monthly Benefit for Covered Monthly Expense
$ _____

Benefit Period  (months)  ☐ 12  ☐ 24

Elimination Period (days)  ☐ 30  ☐ 60  ☐ 90

Optional Benefits  ☐ Good Health Benefit/Refund of Premium
☐ Guaranteed Insurability Option Amt. $ _____

(b) For a business other than a personal service business, please describe the personal services that you provide to your business without which revenue would be substantially reduced.

_____

_____

_____

_____

(c) Excluding yourself,
(i) How many are employed in the business? _____
(ii) How many of these employees are members of your profession? _____
(iii) How many of these employees are members of your immediate family? _____

(d) List your average monthly business overhead expenses during the past 6 months.  If you share monthly business expenses with others, list only your share.  Exclude salaries, fees, drawing accounts, profits or any other remuneration for:
(i) you;
(ii) any partners;
(iii) any member of your profession or person performing duties similar to yours; or
(iv) any members of your immediate family.

Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ _____

Taxes (not income taxes) and mortgage
interest payments . . . . . . . . . . . . . . . . . . . .$ _____

Other interest on business indebtedness . . . . .$ _____

Utilities

Electricity . . . . . . . . . . . . . . . . . . . . . . .$ _____

Telephone . . . . . . . . . . . . . . . . . . . . . . .$ _____

Maintenance Services . . . . . . . . . . . . . . . .$ _____

Property & Liability Insurance . . . . . . . . . .$ _____

Depreciation of Business Equipment . . . . . . .$ _____

Employees' salaries (excluding items above) . . . .$ _____

Other normal and customary fixed office
expenses (specify below) . . . . . . . . . . . . . . . . .$ _____

_____

_____

Total (of d above) . . . . . . . . . . . . . . . . . .$ _____

0000936 -3 DE

# MetLife®

Metropolitan Life Insurance Company

6. (a) Mode of Premium Payment:
    ❏ Annual   ❏ Semi-Annual
    ☑ Check-O-Matic  ❏ Payroll Deduction
    (b) Will the entire premium for this policy be paid directly
        by your employer?  ❏ Yes ❏ No
    (c) If "Yes" will any portion of this premium be treated
        as taxable income to you?  ❏ Yes ❏ No

7. Amount paid with Application: $ 288.56 or ❏ None
This amount ☑ is ❏ is not equal to at least one month's premium.
No temporary insurance can take effect unless one month's premium
is received.

8. Revocable Beneficiary

Angela Matulas      wife
Full Name      Relationship      Date of Birth

9. Do you have or have available to you through your employer, or are you applying for any other type of:
    (a) Individual, Association or Group disability income insurance coverage?  ❏ Yes ☑ No
    (b) Formal employer sick pay or Union disability income coverage not included in (a)?  ❏ Yes ☑ No
    (c) Business Overhead Expense or Buy/Sell Disability coverage?  ❏ Yes ☑ No
        If "Yes" to question 9a, 9b or 9c, complete the following using the following codes for questions 9 and 10 to indicate
        "Type": G-Group; A-Association; E-Employer Sick Pay or Union; B-Business Overhead Expense; B/S-Buy/Sell

**Disability Coverage In Force, Applied For or Available Through Your Employer**

| Company or Source | Type | Total Monthly Benefit | Social Insurance Offset | Issue Month/ Year | Elimination Period Accident | Elimination Period Sickness | Benefit Period Accident | Benefit Period Sickness |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

10. Is coverage being applied for replacing or changing any existing insurance with MetLife or any other insurance company?
    ❏ Yes  ❏ No  If "Yes", complete the following:

**Disability Coverage to be Replaced or Changed**

| Insurance Company Name And Address | Policy Number | Monthly Benefit | Type | Issue Month/Year | Termination Month/Year | Premium Mode |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

**11. Financial Information:**

| | Current Year (Annualized) | Last Year | Two Years Ago |
|---|---|---|---|
| **Employee/Salaried Earnings** | | | |
| (a) Base Salary (W-2 Income) | $ | $ | $ |
| (b) Commissions | $ | $ | $ |
| (c) Bonus, Profit Sharing or Incentive Payments | $ | $ | $ |
| **Owner/Shareholder Earnings** | | | |
| (d) Sole Proprietor net business earnings/losses | $ | $ | $ |
| (e) Partnership/S-Corporation net business earnings/losses | $ | $ | $ |
| (f) Net share of corporate earnings/losses | $ | $ | $ |
| Total Earned Income (Sum of Lines a through f) | $ 80,000 | $ 80,000 | $ 75,000 |
| **Other Income; Unearned Income** | | | |
| (g) Dividends and Interest | $ | $ | $ |
| (h) Net rental income before depreciation | $ | $ | $ |
| (i) Other (identify source) _____ | $ | $ | $ |

**Financial Information (cont.)**

IDI2000-APP-DE

# MetLife®

Metropolitan Life Insurance Company

0000936 -4 D

**11. Financial Information (cont.)**

**Current Net Worth**

(j) Does your net worth exceed $3,000,000? ☐ Yes ☐ No
(If "Yes" give details below. Amounts expressed to the nearest $100,000 are acceptable)

Assets

Cash, Savings, Stock & Bonds ........................................................................... $_____

Personal Property (such as jewelry, furnishings) ........................................................ $_____

Personal Residence ....................................................................................... $_____

Other Real Estate ......................................................................................... $_____

Business Interest(s) ...................................................................................... $_____

Other (specify source)_____ $_____

Less: Indebtedness $_____

Total $_____

(k) Which tax forms are being submitted with this application? ☐ 1040s and all schedules ☐ W-2s ☐ Other _____

(l) In the past five years have you or any business in which you held at least a 5% interest filed for bankruptcy?
☐ Yes ☐ No    If "Yes", give details below, including date of discharge, status and type.

_____
_____

12. (a) Have you: had a driver's license suspended or revoked in the last 3 years; been convicted of 3 or more moving violations; been convicted of driving while impaired or intoxicated? ☐ Yes ☐ No If "Yes", give details below.
(b) Other than above, have you been convicted of any felony or misdemeanor, or do you have any charges pending?
☐ Yes ☐ No If "Yes", give details below.

_____
_____

13. Has any application for a policy of Life, Health or Disability Insurance on you ever been postponed, rated, modified, declined, rescinded or required an extra premium? ☐ Yes ☐ No If "Yes", give details below.

_____
_____

14. (a) Are you required to hold a professional job license? ☐ Yes ☐ No
(b) If "Yes", have you been subject to any disciplinary action, revocation, or suspension of your license, or do you have any charges currently pending against your license? ☐ Yes ☐ No If "Yes", give details below.

_____
_____

15. Have you flown as a pilot, student pilot, or crew member in the last 2 years or do you intend to do so in the next 12 months?
☐ Yes ☐ No If "Yes", complete the Aviation Questionnaire.

16. Have you ever engaged in or do you plan to engage in: Automotive, Motorcycle (including off road use) or Power Boat Racing; Bobsledding; Snowboarding; Skiing; Underwater Cave Exploration; Water Skiing; White Water Rafting; Spelunking; Ballooning; Scuba Diving; Sky Diving; Bungee Jumping; Hang Gliding (including Slope Soaring, Parakiting, Ultralighting, etc.); Mountain Climbing; Parachuting; Snowmobile Racing; Slalom Racing; Rodeo Activities; Karate or Martial Arts?
☐ Yes ☐ No If "Yes", complete the Avocation Questionnaire.

IDI2000-APP-DE

0000936 -5 DE



Metropolitan Life Insurance Company

## Part B. Statements By the Proposed Insured

1. (a) Height __6' 4"__     (b) Weight __225__

2. How much time have you lost from work during the past 5 years because of accident or sickness? __NO__

3. Date you last used tobacco in any form:  Date _____  Type _____  ☒ Never used tobacco

4. (a) Please provide the name, address and phone number of your personal/primary care physician(s) as well as the date and reason for your last consultation.  If none, check here ❑

| Name, Address and Phone Number | Date | Reasons for Consultation: Nature, Severity and Frequency of Symptoms; Diagnosis, Treatment and Current Status of Condition |
|---|---|---|
| MR. Matulas has No Dodr | | |
| | | |
| | | |

(b) In addition, in the past 5 years has any Chiropractor, Counselor, Health Facility, Physician, Practitioner, Psychiatrist, Psychologist, Social Worker, or Therapist examined or treated you?  ❑ Yes  ☒ No

Give details below for each instance:

**(Use Supplementary Information Page, pg. 7 if more space is needed)**

| Name, Address and Phone Number of each Chiropractor, Counselor, Health Facility, Physician, Practitioner, Psychiatrist, Psychologist, Social Worker or Therapist | Date | Reasons for Consultation: Nature, Severity and Frequency of Symptoms; Diagnosis, Treatment and Current Status of Condition |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

IDI2000-APP-DE

0000936 -6 D

# MetLife®

Metropolitan Life Insurance Company

**5. Have you EVER** received treatment, attention or advice for; been told that you had; or had any known indication of:

|  | Yes | No |
|---|---|---|
| (a) Any disease or disorder of the heart; arteries or veins; chest pains; elevated (high) blood pressure (hypertension)? | ☐ | ☑ |
| (b) Arthritis; any disease, disorder or deformity of the bones, muscles, tendons, or joints, including the spine; any neck or back problems or disorders; carpal tunnel syndrome? | ☐ | ☑ |
| (c) Any mental, nervous or emotional problem, condition or disorder, including anxiety, depression or stress? | ☐ | ☑ |
| (d) Stroke, embolism, thrombosis? | ☐ | ☑ |
| (e) Cancer, tumor or polyp? | ☐ | ☑ |
| (f) Diabetes or high blood sugar? | ☐ | ☑ |
| (g) Any disease or disorder of the lungs or respiratory system, including asthma, allergy, emphysema, or Chronic Obstructive Pulmonary Disease? | ☐ | ☑ |
| (h) Any disease or disorder of the liver, gall bladder, pancreas, digestive tract, including intestines; ulcer, colitis, hemorrhoids, or hernia? | ☐ | ☑ |
| (i) Memory loss, loss of concentration, fatigue, neurologic disorder, unconsciousness, loss of cognition, dizziness, paralysis or numbness, impairment of nervous system, epilepsy, or seizures? | ☐ | ☑ |
| (j) Any disease or disorder of the urinary tract or kidney; sugar, albumin or blood in urine? | ☐ | ☑ |
| (k) Any physical deformity or physical impairment? | ☐ | ☑ |
| (l) Any disease or disorder of glands; anemia, leukemia or other blood disorders? | ☐ | ☑ |
| (m) Any disease or disorder of the prostate or testes; uterus, ovaries or breasts? | ☐ | ☑ |
| (n) Any disease or disorder or impairment of the eyes, ears, mouth, nose or throat; any loss of vision or hearing? | ☐ | ☑ |
| (o) Endocrine disorders or goiter or disease or disorder of the thyroid gland? | ☐ | ☑ |
| (p) During the past 10 years: Any sexually transmitted disease; Positive HIV test; Acquired Immune Deficiency Syndrome or other immune deficiency? | ☐ | ☑ |

|  | Yes | No |
|---|---|---|
| (q) Adult Attention Deficit Disorder, Adult Attention Deficit Hyperactivity Disorder, Alzheimer's Disease, Chronic Fatigue Syndrome, Epstein-Barr Virus, Fibromyalgia, Lyme Disease, Myalgia or Encephalitis? | ☐ | ☑ |

**6. Have you EVER:**

(a) Been advised to have any medical test or surgical operation that was not performed, or had any medical test or surgical operation performed, or gone to a hospital, doctor's office, clinic, dispensary or sanatorium for observation, examination or treatment; and this information has not been revealed by previous questions?  ☐ Yes ☑ No

(b) Been advised to modify or restrict eating, drinking or living habits because of any health conditions?  ☐ Yes ☑ No

(c) Had persistent cough, pneumonia, chest discomfort, muscle weakness, unexplained weight loss of 10 pounds or more, swollen glands, patches in the mouth, visual disturbance, recurring diarrhea, fever or infection?  ☐ Yes ☑ No

**7.**

(a) Are you currently disabled, or do you expect to be disabled?
☐ Yes ☑ No

(b) Have you received or applied for disability, workers' compensation, or military disability benefits from any source in the past 5 years?  ☐ Yes ☑ No

(c) Are you pregnant?  ☐ Yes ☑ No
If "Yes," expected delivery date? _____

(d) Within the last five years, have you taken any prescription medications, over the counter herbal medications, or been advised by a physician to take any medications, or are you now taking any prescription medications or over the counter herbal medications?
If "Yes", give name, dosage, dates and reason below.

**8. Have you EVER** used heroin, cocaine, marijuana, barbiturates or other drugs, except as prescribed by a physician or other practitioner; abused alcohol or drugs; or received treatment or advice regarding the use of alcohol or drugs from a physician, other practitioner, or organization which assists those who have an alcohol or drug problem?  ☐ Yes ☑ No

**9. For any "Yes" answer to Questions 5 through 8, give details: (Use Supplementary Information Page, pg. 7 if more space is needed)**

| Item No. | Name, Address and Phone Number of each Chiropractor, Counselor, Health Facility, Physician, Practitioner, Psychiatrist, Psychologist, Social Worker or Therapist | Dates | Reason for Consultation; Nature, Severity, and Frequency of Symptoms; Diagnosis, Treatment & Current Status of Condition |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

# MetLife®

Metropolitan Life Insurance Company

0000936 -8 DE

## Agreement

**I have read this application and any supplemental applications or amendments, and to the best of my knowledge and belief, I agree that: (a)** All statements and answers are true and complete; and **(b)** All of the information is correctly recorded in the application; and **(c)** Such written statements may be relied on by MetLife in order to determine if I qualify for issue of a policy.

I understand that the application seeks full disclosure of the information sought; and that no one has the right to alter or exclude or to direct me to alter or exclude any information from the application.

I understand that this application, any paramedical application, and any supplemental applications or amendments will become a part of any policies issued as a result of this application.

Except as set forth in the Temporary Insurance Agreement, the policy will not be in effect and MetLife will have no liability until: **(a)** a policy is delivered in person to me and is accepted by me; and **(b)** the full first premium due is paid. The policy will then be in effect as of its date of issue if at the time it is delivered:

> **(a)** the condition of my health, the amount of my income, and the status of my employment or occupation are the same as given in the application; and **(b)** I, the proposed insured, have not received any medical advice or treatment from a physician or other medical practitioner since the date of this application.

If there are any exceptions to (a) or (b), the policy will not be in effect and I will immediately give MetLife details in writing.

I understand that MetLife will rely on the fact that coverage under any policies listed in Part A, Question 10 on page 3 will end on the Effective Date of Termination shown. If such coverage does not end at that time, any policy issued as a result of this application will be void from the beginning; all premiums will be returned; and no benefits will be payable. MetLife has the right to contact any listed insurer after the Effective Date of Termination to confirm that coverage has ended.

**Any person who knowingly, and with intent to defraud an insurance company or other person, submits an application for insurance or files a claim containing any false, incomplete, or misleading information is guilty of insurance fraud, which is a crime.**

| Witness (Licensed Resident Agent) | Place | Mo.   Day   Yr. | Signature of Proposed Insured |
|---|---|---|---|
| X _William Sh_ | W.m DE | 11-16-04 | X _____ |

## Personal History Interview

As part of your application process, MetLife, or someone it designates, will telephone you to verify information in this application, including your occupation, medical history and income. This phone call will take between 15 and 20 minutes to complete. Please indicate below, the best way to reach you.

Home: _Cell_                         Work:

| Day of Week | Date | Time | AM/PM | Phone ( 302 540 1923 | Day of Week | Date | Time | AM/PM | Phone ( 302 892-2222 |
|---|---|---|---|---|---|---|---|---|---|
| _Any time_ | _After 10 AM_ | | | | | | | | |

Other:

| Day of Week | Date | Time | AM/PM | Phone ( ) |
|---|---|---|---|---|

### CHECK-O-MATIC (C-O-M)

I understand that paying my insurance premiums monthly may result in a higher yearly out-of-pocket cost than a less frequent premium mode.

**Be sure to enclose a voided blank check for the account you wish to use and sign this authorization.**

I authorize: (1) MetLife to initiate monthly deductions from my checking account, by electronic or other means, as payment for the coverage level selected; and (2) the financial institution on which my enclosed sample check (marked VOID) is drawn, to: (a) accept the deductions initiated by MetLife; and (b) give MetLife my most recent address upon MetLife's request. Withdrawals will continue until MetLife has had a reasonable opportunity to act upon my written request to end this service. I authorize deductions to be taken on the effective date of the policy and on the _____ day of the month, or the next business day.

X _____
Signature of Account Holder for Monthly Automatic Deductions                      Date

If your check is drawn on a credit union, indicate credit union phone number: ( ) _____

IDI2000-APP-DE

0000936 -7 DE

# MetLife®

Metropolitan Life Insurance Company

# Supplementary Information Page for Applicant

Provide additional application information on this page. **This information will be included in the Policy.**

Deb Amadure has financials
+ we have done financial underwriting



**MetLife**
Metropolitan Life Insurance Company
New York, New York 10010

## AUTHORIZATION

**In connection with an application for insurance, for underwriting and claim purposes, I authorize:**

- Any medical practitioner or facility or related entity; any insurer; the Medical Information Bureau, Inc. (MIB); any employer; group policyholder, contract holder, or any benefit plan administrator to give Metropolitan Life Insurance Company (the "Company"), or any third party acting on behalf of the Company in this regard:
  - personal information and data about me;
  - medical information, records and data, about me, including information, records and data about drugs prescribed, medical test results and sexually transmitted diseases;
  - information, records and data about me related to alcohol and drug abuse and treatment, including information and data records and data related to alcohol and drug abuse protected by Federal Regulations 42 CFR part 2;
  - information, records and data about me relating to Acquired Immune Deficiency Syndrome (AIDS) or AIDS related conditions including, where permitted by applicable law, Human Immunodeficiency Virus (HIV) test results; and
  - information, records and data about me relating to mental illness, other than psychotherapy notes.
- The Company to redisclose information, records, and data received pursuant to this Authorization about me as authorized by me in writing or as otherwise permitted by applicable law.
- The Company, or any third party acting on behalf of the Company in this regard, to request and obtain consumer, investigative consumer or motor vehicle reports about me.
- Any employer, business associate, financial institution, or government agency to give the Company, or any third party acting on behalf of the Company in this regard, any information or data that it may have about my occupation, avocations, driving record, finances, character, reputation and aviation activities.

**By signing below, I acknowledge my understanding that:**

- All or part of the information, records and data that the Company receives pursuant to this authorization may be disclosed to MIB. Such information may also be disclosed to and used by any reinsurer, employee, affiliate or independent contractor who performs a business service for the Company on the insurance applied for or on existing insurance with the Company, or disclosed as otherwise required or permitted by applicable laws.
- Medical information, records and data that may have been subject to federal and state laws or regulations, including federal rules issued by Health and Human Services, setting forth standards for the use, maintenance and disclosure of such information by health care providers and health plans and records and data related to alcohol and drug abuse protected by Federal Regulations 42 CFR part 2, once disclosed to the Company, may no longer be covered by those laws or regulations.
- Information obtained pursuant to this authorization about me may be used, to the extent permitted by applicable law, to determine the insurability of other family members.
- I may ask to be interviewed if an investigative consumer report is ordered.  Please call me at ( )_____, time _____ if such report is ordered.
- Information relating to HIV test results will only be disclosed as permitted by applicable law.
- This authorization will end 30 months from the date on this form or sooner if prescribed by law. I may revoke it at any time by writing to the Company at _____and advising the Company that I have revoked this Authorization.  Revocation may result in rejection of the application or in denial of coverage or a claim for benefits.  Any action taken before the Company has received my revocation will be valid.
- I have a right to receive a copy of this form.

**A photocopy of this form is as valid as the original form.**

Signature of Proposed Insured: _____  Date: 11-16-04

Print Name of Proposed Insured: ANAGNOSTIS MANTAS

IDI2000-APP-AUTH

Sent By: APPS PARAMED;                    610 592 8291;          Dec-16-04  4:12PM;          Page 2

Dec. 16, 2004 11:17AM        PA FORMS                DE Form  9806  P. 1/3
                                                     APPS

## PART II: Paramedical/Medical Exam

Case/Policy No.:

☐ Metropolitan Life Insurance Company
☐ MetLife Investors Insurance Company
☐ New England Life Insurance Company
☐ Texas Life Insurance Company

☐ Metropolitan Tower Life Insurance Company
☐ Metropolitan Insurance and Annuity Company
☐ MetLife Investors USA Insurance Company
☐ General American Life Insurance Company

The Company indicated above is referred to as "the Company".
For Texas Life: If medical examination is not required, questions are to be completed by Agent; for Texas Life, if medical examination is not required, questions are to be completed by Agent. Nothing but the answers of such person should be recorded.

The spaces below are for answers of person to be examined only. Nothing but the answers of such person should be recorded.

Date of Birth: (Mo./Day/Year) 1958

1. Name of Proposed Insured: (Last, First, Middle)    ANAGNOSTIS MATULAS

2. Tobacco Use – Indicate date last smoked/used:
   __/__/__ ☑ Never Cigarette    __/__/__ ☐ Never Smokeless Tobacco    __/__/__ ☐ Never Cigar/Pipe    __/__/__ ☑ Never Patch/Gum
   Tobacco Never Used: ☐ Yes ☑ No
   Amount/Frequency:

3. Who is the doctor, practitioner, or health care facility who can give us the most complete and up to date information concerning your present health? If "None", check ☐.
   Name, full address, and phone number:    ANAGNOSTIS MATULAS    109 BROOKMEADOW RD.
   302 777-0946
   When was this doctor last consulted? Why? NEVER
   What treatment was given or medication prescribed? If "None", check ☑
   Reasons, findings, earlier consultations past 5 years?    Nothing

4. a) Height 6 ft. 4 in.  b) Weight 230 lbs.  c) Change in weight in past 12 months (give reason) Diet
   Pounds lost 1  Pounds gained 2  Reason Diet

5. Have you EVER received treatment, attention, or advice from any physician, practitioner or health facility for, or been told by any physician, practitioner or health facility that you had:
   Details: List question number. Give: details; dates; duration; diagnosis; treatment; and doctors' names and addresses.

   a) High blood pressure; chest pain, heart attack; or any other disease or disorder of the heart or circulatory system?  ☐ Yes ☑ No

   b) Asthma; bronchitis; emphysema; sleep apnea; shortness of breath; or any other disease or disorder of the lungs or respiratory system?  ☐ Yes ☑ No

   c) Seizures; stroke; paralysis; Alzheimer's disease; multiple sclerosis; Lou Gehrig's disease (ALS); memory loss; Parkinson's disease; progressive neurological disorder; headaches; dizziness; or any other disease or disorder of the brain or nervous system?  ☐ Yes ☑ No

   d) Ulcers; colitis; hepatitis; cirrhosis; or any other disease or disorder of the liver, gallbladder; stomach; or intestines?  ☐ Yes ☑ No

   e) Any disease or disorder of: the kidney; bladder; prostate; reproductive organs; or breasts; sexually transmitted disease; sugar; albumin; blood or pus in the urine?  ☐ Yes ☑ No

   f) Diabetes; thyroid disorder; or any other endocrine disorder?  ☐ Yes ☑ No

   g) Arthritis; gout; or disorder of the muscles, bones, or joints?  ☐ Yes ☑ No

   h) Cancer; tumor; polyp; or cyst? Any disease or disorder of the skin?  ☐ Yes ☑ No

Sent. By: APPS PARAMED;                     610 532 8291;              Dec-16-04  4:13PM;         Page 4/4

Det. 16. 2004 11:18AM                                                  No. 9806    P. 3/3

Details (Continued):

| i) | Anemia; leukemia; or any other disorder of the blood or lymph glands? | ☐ Yes ☒ No |
|---|---|---|
| j) | Depression; stress; anxiety; or any other psychological or emotional disorder or symptoms? | ☐ Yes ☒ No |
| k) | Any disease or disorder of the eyes, ears, nose, or throat? | ☐ Yes ☒ No |

6. Are you now, or within the last six months, under observation or taking medication or treatment? (Including over the counter medications, vitamins, herbal supplements, etc.)   ☐ Yes ☒ No

7. Do you have any doctor's visits, medical care, or surgery scheduled?   ☐ Yes ☒ No

8. Other than the above, during the past five years have you had any:
   a) Checkup; electrocardiogram; chest x-ray; or medical test?   ☐ Yes ☒ No
   b) Illness; injury; or health condition not revealed above; or have been recommended to have any: treatment, hospitalization; surgery; medical test; or medication?   ☐ Yes ☒ No

9. Have you:
   a) ever been diagnosed or treated by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or AIDS related Complex (ARC)?   ☐ Yes ☒ No
   b) ever tested positive for the AIDS (HIV) virus or for antibodies to the AIDS (HIV) virus?   ☐ Yes ☒ No

10. a) Have you ever used heroin, cocaine, barbiturates, or other drugs, except as prescribed by a physician or other licensed practitioner?   ☐ Yes ☒ No
    b) Have you ever received treatment from a physician or counselor regarding the use of alcohol, or the use of drugs except for medicinal purposes; or received treatment or advice from an organization that assists those who have an alcohol or drug problem?   ☐ Yes ☒ No    How often? _____

11. Do you exercise?   ☐ Yes ☒ No   Type _____

12. Are you now pregnant?   ☐ Yes ☒ No   If "Yes", estimated date of delivery? _____

13. Has a parent or sibling of any person to be insured ever had; heart disease; coronary artery disease; high blood pressure; cancer; diabetes; or mental illness? (If Yes, indicate below.)   ☐ Yes ☒ No

| Relationship to Proposed Insured: | Age(s) If Living | Age(s) at Death | State of Health (Specific Conditions) or Cause of Death Attach additional sheet(s) if necessary. |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

14. a) Do you currently use any mechanical equipment such as a walker, wheelchair, long leg braces or crutches?   ☐ Yes ☒ No
    b) Do you need any assistance or supervision with the following activities; bathing, dressing, walking, moving in/out of a chair or bed, toileting, continence or taking medication?   ☐ Yes ☒ No

I have read the answers to questions 2-14 before signing. They have been correctly written, as given by me, and are true and complete to the best of my knowledge and belief. There are no exceptions to any such answers other than as written.



| Witness to Signature | City and State | Mo./Day/Year | Signature of Proposed Insured (Parent or Guardian if under 18) |
|---|---|---|---|
| | Wilmington, DE | 12/8/04 | |

Page 2
EMED-13-02

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

METROPOLITAN LIFE INSURANCE           :
COMPANY,                              :
                                     :
          Plaintiff,              :
                                     :   CIVIL ACTION NO. _____
    v.                             :
                                     :
ANAGNOSTIS MATULAS,                   :
                                     :
          Defendant.             :

## CERTIFICATE OF SERVICE

I, James S. Yoder, Esquire, do hereby certify that a true and correct copy of the

**Summons** & the **Complaint** was served, on the following individual,

      Mr. Anagnostis Matulas
      109 Brook Meadow Road,
      Wilmington, DE 19807-2139

personally, or by leaving copies thereof at the individual's dwelling house of usual place of

abode with some person of suitable age and discretion then residing therein.


                                  _____
                                    James S. Yoder (#2643)



Dated: December 15, 2006

JS 44MD (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I.(a) PLAINTIFFS | DEFENDANTS |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY | ANAGNOSTIS MATULAS |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES) <br><br> New York, New York | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY) <br><br> New Castle <br> NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION O TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER) <br> White and Williams LLP <br> 824 N. Market Street – Suite 902 <br> Wilmington, DE  19899 <br> 302.654.0424 | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX PLAINTIFF AND ONE BOX DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF |
|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | | |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Incorporated and Principal Place of Business in Another State | ☐ 5 |
| | | | Foreign Nation | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATU |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportic |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Bank |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC I |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influe Corrupt Organizi |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | | ☐ 810 Selective Servic |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Comm Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challe 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabili |
| | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental M |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocatio |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Ui Equal Access to |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS – Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory / |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to I Judge from Magistrate

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U.S.C. § 1332. Breach of insurance contract and related claims.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    Check YES only if demanded in con

JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See Instructions) "Anagnostis Matulas v.

JUDGE

DOCKET NUMBER

PARDMS 78313v.1

Metropolitan Life Insurance Co.", Superior Court of
the State of Delaware in and for Kent County

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
| --- | --- |
| December 14, 2006 | s/ James Yoder |

FOR OFFICE USE ONLY

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
| --- | --- | --- | --- | --- |

PARDMS 78313v.1

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _-06--768_____

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____|_____ COPIES OF AO FORM 85.

_12/15/06_

(Date forms issued)

_Gerald J. Vintigni_

(Signature of Party or their Representative)

_Gerald J. Vintigni_

(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action